**Richard RIDYOLPH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47372.**

Court of Criminal Appeals of Texas.

Nov. 21, 1973.

Rehearing Denied Jan. 16, 1974.

J. Douglas Tinker, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty., John Potter, Asst. Dist. Atty., Corpus Christi, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

JACKSON, Commissioner.

The conviction was for murder with malice; the punishment assessed by the court, 50 years.

On August 19, 1971, at night, Officer John W. Sartain was shot in the head as he was leaving the back entrance of the police station in company with two other officers. Convincing circumstantial evidence and the written confession of appellant were sufficient to show that he, a 17 year old boy at the time of trial, fired the fatal shot with a .30 caliber carbine while resting the rifle on a fence about 250 yards away.

The appellant did not testify. During the trial the defense was that if he were guilty of anything it was negligent homicide and not murder, thus the issue concerning whether or not the lights were on at the back of the police station where the

policemen were leaving was hotly contested.

We find it necessary to reverse this case upon the ground of error which states:

"The trial court erred in failing to grant a new trial after evidence was introduced reflecting that the district attorney had in his file evidence which would or could have aided the appellant in his defense and evidence which was contrary to that which was introduced by the State in its trial on the merits."

The "motion to inspect statements of witnesses" was heard before the trial on the merits. It asked the court to require the district attorney to disclose all evidence and information favorable to the accused on the issue of guilt or punishment, specifically referring to arrest or police reports.

During the hearing on this motion, the assistant district attorney stated to the court:

"Now, quite a few statements, also consistent with *Brady*, that calls for the district attorney to make representation to the court they have reviewed the file thoroughly and fully and to state to the court whether or not there was any exculpatory or mitigating evidence in this file, and I will do that at this time. There is not."

Following such hearing, the court did not allow defense attorney to inspect the district attorney's file, but required it to be submitted to the court for an in chambers inspection. After such inspection the court stated that he found only one thing that would be helpful to the accused. It did not relate to Exhibit No. 6, hereafter mentioned, and no disclosure of Exhibit No. 6 or its contents was mentioned by the court nor was it ordered furnished to appellant's attorney.

Exhibit No. 6 was at the times above mentioned in the district attorney's file and was examined by the court in chambers. There is nothing in the record to show that defense counsel had any knowledge of it or its contents. It was a written report made by Sgt. M. R. Garza of the Corpus Christi Police Department on August 20, 1971, relating to the shooting of Officer John W. Sartain on the previous night. Among other contents not necessary to recite, the report related that Garza and Lts. Bell and Wimbish "checked 1729 Tanner, Bobbie Lee, she stated she was watching T.V. and she heard a shot, she looked out the window and saw that the lights at the police station were out."

It was established by circumstantial evidence and by the confession of appellant that he fired the shot that entered the head of Officer Sartain and killed him as he had stepped out the back door of the police station at night. However, the crux of this case was whether appellant was guilty of negligent homicide or murder with malice, and the jury was so charged. Could he have seen the policeman and thus been trying to kill him, or was he only negligently firing a rifle at an empty building?

The issue of whether the lights were on or off at the back of the police station was hotly disputed. The State contended through its witnesses that the lights were on, and thus appellant when he fired the rifle must have known the policemen were there and was guilty of murder. The defense through witnesses and in argument contended to the contrary, and that appellant could not be convicted of anything greater than negligent homicide.

If this appellant had known of the existence of Bobbie Lee, who did not testify, and her statement that the lights at the police station were off, such evidence would have been material to the defense of the charge of murder and could have been offered also in mitigation.[1]

---

1. Officer Glen Boggs, a patrolman on the police force, was one of appellant's witnesses who testified that the lights at the rear of the police station were generally off, although he was not on duty on the night of August 19, 1971, and could not state specifi-

In Means v. State, Tex.Cr.App., 429 S.W.2d 490, Presiding Judge Onion, speaking for the Court, traced the continuing development of the prosecutor's constitutional duty to disclose evidence favorable to the accused. In that discussion it was stated:

"Further, we note that a conviction must be reversed if the prosecutor actively suppresses evidence which may exonerate the accused or be of material importance to the defense. Jackson v. Wainwright, 5 Cir., 390 F.2d 288; Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; United States ex rel. Almeida v. Baldi, [3 Cir.] 195 F.2d 815, 33 A.L.R.2d 1407, cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341; Curran v. State of Delaware, 3 Cir., 259 F.2d 707, cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353. See Goldstein, 'The State and the Accused: Balance of Advantage in Criminal Procedure,' 69 Yale L.J. 1149 (1960)."

The opinion in *Means* went on to recognize that reversible error may also occur where by negligence or inadvertence the prosecutor fails to disclose evidence which might exonerate or be of material importance to the accused. Means v. State, supra. See also Crutcher v. State, Tex.Cr.App., 481 S.W.2d 113.

Recently, in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706, the Supreme Court pointed out that the important factors in a situation such as the one faced by this appellant are:

(1) Suppression by the prosecution after a request by the defense,

(2) The evidence's favorable character for the defense, and

(3) The materiality of the evidence.

Considering these factors as applied to the facts of this case, we hold that it was the duty of the district attorney to disclose the existence of this material evidence to the defense and because of the failure to do so, a new trial should have been granted.

After a review of this record, it is urged that the court seriously consider a change of venue in the event of another trial.

The judgment is reversed and the cause remanded.

DOUGLAS, J., concurs in result

Opinion approved by the Court.

cally as to that night. Following his testimony Officer Wimbish was asked if Boggs had been suspended from the police force, but objection was sustained and the question was not answered. It was following Boggs' testimony that Commander Bowman of the Police Department became upset at the testimony of Boggs and threw a piece of paper over the rail in the courtroom to attract the district attorney's attention. Be-

cause of this action, the court in the presence of the jury held a hearing to determine if Bowman was in contempt of court, at the conclusion of which the court stated: "I will accept the Commander's explanation." In view of the reversal of this case on the ground stated, we do not deem it necessary to write on this occurrence, for it will probably not be repeated on another trial.