Waddell FRANK, Appellant,

v.

The STATE of Texas, Appellee.

No. 53800.

Court of Criminal Appeals of Texas.

Nov. 23, 1977.

Percy Foreman and Dick DeGuerin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus, Gregory Eugene Lucia, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of aggravated robbery; punishment is imprisonment for 8 years.

Appellant complains of the indictment, of the court's charge, and of the refusal of the court to grant a new trial.

Appellant contends that the court erred in refusing to grant a new trial because the prosecutor did not disclose to the appellant or his counsel evidence obtained during trial which it is alleged was exculpatory. Evidence adduced at the hearing on appellant's amended motion for new trial showed that Steve Stone, an eyewitness to the robbery, was brought into the courtroom during the trial and was unable to positively identify appellant. The prosecutor did not call Stone to testify and did not inform appellant of Stone's failure to identify appellant. We conclude that the prosecution's failure to do so did not constitute reversible error.

Appellant relies on *Crutcher v. State*, 481 S.W.2d 113 (Tex.Cr.App. 1972), and *Ridyolph v. State*, 503 S.W.2d 276 (Tex.Cr. App. 1974), as requiring the prosecutor to disclose the information in the instant case. In each of those cases, unlike this case, a motion was made by the defendant for the prosecution to disclose exculpatory evidence. In *Crutcher*, the conviction was reversed because the prosecutor did not disclose the fact that the complaining witness previously had given a description which conflicted with her identification of the defendant. In *Ridyolph*, the conviction was reversed because the prosecution failed to disclose the identity of a witness who would have testified unequivocally and favorably to the defendant regarding a hotly disputed, material issue. The facts of the instant case and the type of information which appellant claims was not disclosed are distinguishable from the facts of those cases.

■ Although not cited either by appellant or by the State, the more recent case of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), gives the guidelines by which we may reach our decision. In that case the defendant urged that the trial court erred in failing to grant a new trial because the prosecution failed to disclose that the deceased had a prior criminal record which indicated his violent character, and that information was material to the defendant's claim of self-defense in a murder case. In reversing the Court of Appeals and affirming the decision of the trial court, the Supreme Court analyzed the issue as follows:

"The question before us is whether the prosecutor's failure to provide defense counsel with certain background informa-

tion about Sewell, which would have tended to support the argument that respondent acted in self-defense, deprived her of a fair trial under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

"The answer to the question depends on (1) a review of the facts, (2) the significance of the failure of defense counsel to request the material, and (3) the standard by which the prosecution's failure to volunteer exculpatory material should be judged."

The court went on to say that in cases such as the instant case, in which no specific request for exculpatory material is made,

". . . [T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.

"The Court of Appeals appears to have assumed that the prosecutor has a constitutional obligation to disclose any information that might affect the jury's verdict. That statement of a constitutional standard of materiality approaches the 'sporting theory of justice' which the Court expressly rejected in *Brady.* For a jury's appraisal of a case 'might' be affected by an improper or trivial consideration as well as by evidence giving rise to a legitimate doubt on the issue of guilt. If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice." (Footnote omitted.)

A review of the entire trial is necessary to determine whether the prosecution's failure to disclose information deprived the defendant of a fair trial.

". . . [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is

no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

*United States v. Agurs,* 96 S.Ct. at 2401–02.

■ Applying the above test to the facts of the case at bar, we cannot say that the prosecution's failure to disclose to appellant that Stone failed to identify him would have created a reasonable doubt about appellant's guilt. In the instant case, not only did appellant not make a specific request that exculpatory material be disclosed, but the record does not show that the evidence which was withheld from appellant was material under *United States v. Agurs, supra.* Three eyewitnesses to the robbery, including the complaining witness, identified appellant as carrying a sub-machine gun and being one of a group of five people who participated in the robbery. Other eyewitnesses stated that appellant was not the man in question. At the hearing on the motion for new trial, the assistant district attorney who prosecuted the case testified that Stone would have been unable to testify one way or the other as to whether appellant was one of the robbers. Stone testified at the hearing that he was unable to state positively that appellant either was or was not one of the robbers. Stone also testified that he was in the presence of the man identified by others as appellant for about five minutes, the great part of which he spent either with his back to the man or lying on the floor. He also testified that all he remembered of the man was that he was wearing a long red coat and carrying a sub-machine gun. Since the complaining witness while testifying referred several times to Stone as being present during the robbery, appellant is in no position to contend that he was unaware that Stone had been an eyewitness to the robbery. Given that there were both eyewitnesses who identified appellant and others who stated that appellant was not one of the five robbers, we do not see, viewing the record in its entirety, how Stone's equivocal testimony would have cast a reasonable doubt upon

appellant's guilt. We reject the appellant's argument that a different result is required because all of the defense witnesses were black whereas Stone and all of the witnesses who identified appellant, as well as all of the jurors, were white.

The prosecutor in the instant case neither presented a false picture of the facts nor actively suppressed evidence which might have exonerated appellant or been of material importance to his defense.

"Whether or not the prosecutor in a criminal case must disclose all evidence in his possession favorable to the accused to comply with due process depends on many factors, and a case by case judgment must often be made. It seems likely that many situations will arise in which the prosecutor can fairly keep to himself his knowledge of available testimony which he views as mistaken or false. But there are other circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury." (Footnote omitted.)

*Means v. State*, 429 S.W.2d 490 (Tex.Cr. App. 1968). This case falls into the former category.

■ Appellant complains that the indictment is fundamentally defective in that it fails to show that the property defendant allegedly intended to obtain and maintain control over was the same property that constituted the subject matter of the theft mentioned in the indictment. The indictment, omitting the formal parts, alleges that appellant did:

". . . while in the course of committing theft of *money*, owned by Lois Perkins, hereafter styled Complainant, and with intent to obtain and maintain control of *the property* intentionally and knowingly threaten and place the Complainant in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely, a Thompson sub-machine gun."

The contention is without merit. The indictment plainly alleges that appellant had the intent to obtain and maintain control over "the property," which necessarily refers to the antecedent "money."

■ In six related grounds of error appellant complains that the court's charge was erroneous in that it did not require the jury to find that the sub-machine gun used by appellant was a Thompson sub-machine gun as alleged, that it did not require the jury to find that Lois Perkins owned the money alleged as the subject of the theft, and that it did not require the jury to find that the act done by appellant was done while in the course of committing theft of money owned by Lois Perkins as alleged. Appellant made no objection to the charge. The portion of the charge of which appellant complains states:

"Therefore, if you believe from the evidence beyond a reasonable doubt that Lois Perkins was the owner of property, to wit, money, and that defendant Waddell Frank, in Harris County, Texas, on or about November 7, 1974, while in the course of committing theft from the said Lois Perkins, and with intent to obtain the said property, intentionally and knowingly threatened and placed the said Lois Perkins in fear of imminent bodily injury and death, and used or exhibited a deadly weapon, to wit, a sub-machine gun, you will find the defendant guilty of aggravated robbery."

Reading the charge as a whole, we cannot say there is any doubt that the jury was required to find that Lois Perkins owned the money on the date in question. Nor is it anything but absolutely plain that "the said property" which appellant is alleged to have intended to obtain and maintain control over is the "money" mentioned earlier in the charge and alleged in the indictment.

■ Appellant also asserts that the charge is erroneous because it did not require the jury to find that appellant used a "Thompson sub-machine gun" while committing the robbery, as alleged in the indictment, but instead required only a finding that he used a "sub-machine gun." The needless use of the word "Thompson" being

a descriptive averment of an essential element of the offense charged, it was incumbent upon the State to prove the same. *Weaver v. State*, 551 S.W.2d 419 (Tex.Cr. App. 1977). Several witnesses testified that the gun was a Thompson sub-machine gun, and appellant could not successfully insist that there was a variance between the indictment and the proof. In the instant case, however, appellant is complaining of a variance between the indictment and the charge, not between the indictment and the proof. Since appellant did not object to the charge, he cannot now be heard to complain. *Paul v. State*, 544 S.W.2d 668 (Tex. Cr.App. 1976); *Jackson v. State*, 536 S.W.2d 371 (Tex.Cr.App. 1976).

The judgment is affirmed.

Opinion approved by the Court.