Felisha **FARRELL** a/k/a Latasha
Renee Brown, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–91–00649/650–CR.

Court of Appeals of Texas,
Dallas.

July 31, 1992.

John G. Tatum, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before LAGARDE, KINKEADE and KAPLAN, JJ.

## OPINION

KAPLAN, Justice.

The trial court convicted Felisha Farrell of theft from the person and credit card abuse. Punishment in each case, enhanced by two prior convictions, was assessed at forty-five years' confinement. In five points of error, appellant contends that the evidence is insufficient to support both convictions and that the trial court erred in admitting a charge slip, videotape recording, and photograph into evidence. We affirm appellant's conviction for credit card abuse. We reverse appellant's conviction for theft from the person and enter a judgment of aquittal.

## FACTUAL BACKGROUND

Billie Kay West went grocery shopping with her daughter on September 30, 1990, at about 1:30 p.m.[1] West put her purse in the raised portion of the shopping cart. Her wallet was in the purse. West's

---

1. Billie Kay West testified that her wallet was taken from her shopping cart on *September 30, 1990,* at approximately 1:30 p.m. Barbara Williams, a Sears employee, testified that appellant attempted to purchase a camcorder on *September 3, 1990,* at approximately 3:30 p.m., with a credit card issued to Billie Kay West. Appellant was charged with theft from the person and credit card abuse. Both indictments allege that the offenses were committed on or about *September 3, 1990.* Appellant does not challenge the sufficiency of the evidence based on these inconsistent dates. Our independent review of the record confirms that West's wallet was discovered missing on *September 3, 1990,* two hours before appellant presented her credit card at Sears. We therefore conclude that the *September 30, 1990* date contained in the statement of facts is a typographical error.

daughter took money out of the wallet to buy a Coke. The purse was left unzipped.

Appellant approached West and asked if she knew where the forty-nine cent paper towels were located. West looked for the paper towels, turning her back to the shopping cart and appellant. During this time, appellant was within arm's reach of the shopping cart. West was a few feet away from the cart. West found some paper towels that were sixty-nine cents and handed them to appellant.

West continued shopping. She had gone down the next aisle when she realized that her wallet was missing. West looked for the wallet and then reported the theft to the store manager. Among the items in the wallet was a Sears credit card and her driver's license. West testified that she had not encountered anyone in the grocery store other than appellant. West was later shown a photo line-up. She immediately identified appellant as the person who approached her in the grocery store.

Barbara Williams testified that she works in the electronics department at Sears. Appellant came into her department on September 3, 1990, at about 3:30 p.m. Appellant told Williams that she wanted to buy an RCA camcorder valued at over $1000. Williams began writing up the sales ticket. Appellant indicated that she wanted to charge the purchase and handed Williams a Sears charge card. The card was issued to Billie Kay West. Williams then asked appellant for a driver's license. Appellant produced a license issued to West but bearing appellant's picture. Williams testified that she thought the license had been altered. Williams processed the transaction. Appellant signed West's name to the sales receipt.

Williams went to the stock room, purportedly to get the camcorder. Instead, she called security. Williams returned to the floor and told appellant that they were out of the requested merchandise. She told appellant that they could order the camcorder, but appellant declined the offer. Appellant left the store.

A store manager called the credit department and got West's telephone number. After talking with West, the manager pursued appellant after she left the store. Appellant was apprehended and taken to the security office. Williams identified appellant as the person who tried to use West's credit card to buy the camcorder.

Appellant testified on her own behalf. Appellant testified that she went to the grocery store with Monica Davis to buy some paper towels. She admitted that she noticed West's wallet lying in her purse, but testified that Davis took the wallet. Appellant purchased the paper towels and left the store. Appellant and Davis proceeded to the mall.

Appellant testified that she went into the main part of the mall and Davis went to Sears. When appellant finished her shopping, she went into Sears to find Davis. Davis was in the electronic's department. Davis told her that the salesperson had gone to get a camcorder and asked appellant to wait at the counter while she went to the restroom. Davis gave appellant the credit card and left. The salesperson returned and indicated that they were out of the camcorders. Just then, Davis returned and said, "Let's get out of here." She took the credit card from appellant and left. Appellant was walking to the car when she was confronted by the store manager. On cross-examination, appellant admitted to numerous misdemeanor theft convictions in which she used various aliases.

## SUFFICIENCY OF THE EVIDENCE

In two points of error, appellant contends that the evidence is insufficient to support her convictions for theft from the person and credit card abuse.

### A. Standard of Review

■ In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 425 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). If the

evidence supports an inference other than the guilt of the accused, a finding of guilt beyond a reasonable doubt is not a rational finding. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983), *overruled, Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991).[2]

The trial court, as the trier of fact, is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Limuel v. State*, 568 S.W.2d 309, 311 (Tex.Crim.App. [Panel Op.] 1978). The trial court may accept or reject any portion of a witness' testimony. *Id.*

### B. Theft from the Person of Another

In her first point of error, appellant contends that the evidence is insufficient to support her conviction for theft from the person of another. Specifically, appellant argues that the evidence fails to establish that she took the wallet "from the person" of Billie Kay West as alleged in the indictment.

#### 1. Applicable Law

■ Theft occurs when a person unlawfully appropriates property with the intent to permanently deprive the owner of the property. TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1989). Theft becomes a third degree felony if the property is stolen from the person of another. TEX.PENAL CODE ANN. § 31.03(e)(4)(B) (Vernon Supp.1992). To sustain a conviction for theft from the person, the evidence must show that the property was taken from the physical body of the person or from his grasp or immediate possession. *Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App.1986); *see, e.g., Mack v. State*, 465 S.W.2d 941, 942 (Tex.Crim.App.1971); *Alfred v. State*, 659 S.W.2d 97, 98 (Tex.App.—Houston [14th Dist.] 1983, no pet.) (theft of purse from shopping cart

was theft from the person where complainant's hand was on the cart).

■ It is the risk of fright or injury that distinguishes theft from a person from ordinary theft. *Earls*, 707 S.W.2d at 86. Theft from a person involves a risk of fright or injury because a struggle might ensue or a defendant might injure a person in order to take the property. *Id.* The interest in punishing conduct that involves the risk of injury inherent in taking property from a person makes the theft a felony regardless of the value of the property taken. *Id; see also* TEX.PENAL CODE ANN. § 31.03(d)(4)(B).

#### 2. Application of Law to Facts

■ The evidence adduced at trial fails to establish that West's wallet was taken from her person, from her grasp, or from her immediate possession.[3] West placed her purse in the raised portion of the shopping cart. Although she initially said that she had care, custody, and control over her purse, West later testified that she was two to three feet from the shopping cart. West admitted that she was not within arm's reach of the cart. Her back was to appellant and the cart when the wallet was taken. West did not discover the theft until several minutes after appellant had left.

After reviewing the record in the light most favorable to the State, we cannot conclude that West's wallet was taken "from her person" within the meaning of section 31.03(e)(4)(B) of the Penal Code. The evidence is insufficient to support the theft conviction. We sustain appellant's first point of error.

### C. Credit Card Abuse

In her second point of error, appellant contends that the evidence is insufficient to

---

**2.** We are aware of the *Geesa* decision, which abrogates the "reasonable hypothesis" standard of review. In *Geesa*, however, the Court of Criminal Appeals determined that the application of this newly announced rule was to be applied prospectively to those cases tried after the decision was rendered. Because this case was tried *prior* to the time the *Geesa* opinion was issued, *Geesa* is not applicable to our review.

**3.** The facts of this case are distinguishable from those in the other cases where an individual was convicted of theft from a person for taking a purse from a shopping cart. *See, e.g., Mack*, 465 S.W.2d at 941; *Alfred*, 659 S.W.2d at 98. In both *Mack* and *Alfred*, there was testimony that the complainant had her hand on the cart at the time the purse was taken.

support her conviction for credit card abuse. Specifically, appellant argues that the evidence fails to establish that she had the intent to fraudulently obtain property as alleged in the indictment. She argues that any such intent was negated when she declined the salesperson's offer to order the camcorder.

### 1. Applicable Law

Appellant was indicted under section 32.-31(b)(1)(A) of the Penal Code. The constituent elements of credit card abuse, as delineated in that section, are: (1) a person, (2) with the intent to fraudulently obtain property or services, (3) presents or uses a credit card, (4) with knowledge that the card was not issued to her, and (5) with knowledge that it is not used with the effective consent of the cardholder. *Ex parte Mathis*, 571 S.W.2d 186, 187 (Tex. Crim.App.1978); TEX.PENAL CODE ANN. § 32.31(b)(1)(A) (Vernon 1989). Appellant challenges only the sufficiency of the evidence to prove the second element—that she had the intent to fraudulently obtain property.

■ Intent can be inferred from the acts, words, and conduct of the accused. *Williams v. State*, 796 S.W.2d 793, 797 (Tex.App.—San Antonio 1990, no pet.). The law presumes that a person intends the natural and probable consequences of his voluntary acts. *Stallings v. State*, 476 S.W.2d 679, 680 (Tex.Crim.App.1972); *Emerson v. State*, 662 S.W.2d 92, 96 (Tex. App.—Houston [1st Dist.] 1983), *aff'd*, 727 S.W.2d 267 (Tex.Crim.App.1987). Intent is a question of fact to be determined by the trier of fact from all the circumstances and facts in evidence. *Williams*, 796 S.W.2d at 797.

### 2. Application of Law to Facts

■ Appellant told Barbara Williams that she wanted to buy an RCA camcorder. Appellant presented Williams with a Sears charge card issued to Billie Kay West to purchase the merchandise. Appellant handed Williams a driver's license issued to West but bearing appellant's picture. Appellant signed West's name to the sales

receipt. We conclude that the trier of fact could reasonably infer from these facts that appellant intended to fraudulently obtain the camcorder.

The only reason appellant did not obtain actual physical possession of the camcorder was because Williams indicated that it was not in stock. The fact that appellant declined Williams's invitation to order the "out-of-stock" camcorder does not negate her intent to fraudulently obtain the property. *See, e.g., Moreno v. State*, 755 S.W.2d 866, 869 (Tex.Crim.App.1988) (the fact that appellant did not actually cause physical harm to the officer does not negate an intent to kill); *Menke v. State*, 740 S.W.2d 861, 864 (Tex.App.—Houston [14th Dist.] 1987), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989) (the fact that a taking of property later becomes temporary does not negate the intent to permanently deprive the owner of possession); *Fewell v. State*, 687 S.W.2d 807, 810 (Tex.App.—Houston [14th Dist.] 1985, no pet.) (the fact that DEA agents removed the cocaine from boxes prior to delivery does not negate inference that appellant had the intent to deliver the amount originally in the boxes).

The evidence is sufficient to sustain appellant's conviction for credit card abuse. We overrule appellant's second point of error.

### CHARGE SLIP

■ In her third point of error, appellant contends that the trial court erred in admitting the charge slip signed by appellant in her attempt to purchase the camcorder. Appellant argues that the State's failure to timely disclose the charge slip in violation of a discovery order prejudiced the preparation and presentation of her defense, citing *O'Rarden v. State*, 777 S.W.2d 455 (Tex. App.—Dallas 1989, pet. ref'd), and *Ridyolph v. State*, 503 S.W.2d 276 (Tex.Crim. App.1973).

*O'Rarden* and *Ridyolph* are distinguishable. In both cases, the convictions were reversed because the prosecution suppressed evidence *favorable* to the defendant. *O'Rarden*, 777 S.W.2d at 458–59;

*Ridyolph,* 503 S.W.2d at 277–78. In the instant case, the prosecution did not suppress exculpatory evidence or impeachment evidence. Prior discovery of the charge slip would not have provided appellant with a means to exonerate herself or to impeach the prosecution's witnesses. To the contrary, the charge slip was purely inculpatory in nature. We cannot conclude, based on the authority cited by appellant, that the trial court erred in admitting the charge slip.

We overrule appellant's third point of error.

## VIDEOTAPE RECORDING AND PHOTOGRAPH

In her fourth and fifth points of error, appellant contends that the trial court erred in admitting a videotape recording and a photograph into evidence. Appellant argues that the State failed to lay a proper predicate for the admission of each of these exhibits. Appellant fails to specify what aspect of each predicate is lacking.

### 1. Applicable Law

■ The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R.CRIM.EVID. 901(a). Rule 901(b) of the Texas Rules of Criminal Evidence illustrates the authentication or identification requirements for certain types of evidence. TEX.R.CRIM.EVID. 901(b). Photographs and videotapes are not included among these illustrations.[4] There is, however, a well-

established common-law predicate for the admission of photographs into evidence. *DeLuna v. State,* 711 S.W.2d 44, 46 (Tex. Crim.App.1986). This same predicate is applicable to the admissibility of videotapes not accompanied by sound recordings.[5] *Huffman v. State,* 746 S.W.2d 212, 222 (Tex.Crim.App.1988).

The predicate for the introduction of a photograph and a videotape not accompanied by a sound recording requires proof of (1) its accuracy as a correct representation of the subject at a given time and (2) its relevance to a material issue. *Huffman,* 746 S.W.2d at 222; *DeLuna,* 711 S.W.2d at 46. This predicate need not be laid by the photographer, the person photographed, or even a person who was present when the photograph was taken. *Huffman,* 746 S.W.2d at 222. Any witness who observed the object or the scene depicted in the photograph may lay the predicate. *Id.* The trial court is accorded considerable discretion in ruling on the admissibility of photographic evidence. *Id.*

### 2. Application of Law to the Facts

■ A video camera was activated after Williams reported the incident to security. The videotape admitted into evidence shows the activities in the electronics department after security was notified. Both Williams and appellant can be seen in the videotape. The photograph admitted into evidence is a picture of appellant that was taken in the security office after she was apprehended by the store manager.

The State laid the proper predicate to admit both the videotape and the photo-

---

**4.** Rule 901(b) describes the authentication and identification required as a condition precedent to the admissibility of: (1) testimony of witnesses with knowledge, (2) nonexpert opinion on handwriting, (3) comparison by trier or expert witness, (4) distinctive characteristics and the like, (5) voice identification, (6) telephone conversations, (7) public records and reports, (8) ancient documents or data compilation, (9) process or system, and (10) methods provided by statute or by rule. TEX.R.CRIM.EVID. 901(b).

**5.** Appellant contends that to admit the videotape into evidence, the State was required to satisfy the seven-prong predicate that was originally adopted with respect to the admissibility of

sound recordings. *Roy v. State,* 608 S.W.2d 645 (Tex.Crim.App.1980). Although this seven-prong predicate must be satisfied to admit videotapes that are both motion pictures and sound recordings, *id.* at 649, there is no evidence in the record to suggest that the videotape in this case contained an audio component. The videotape was taken from a security camera positioned in Sears. The court reporter did not transcribe any sound recording. Barbara Williams, the Sears salesperson, was recalled to describe the events depicted in the videotape. We will treat the videotape as a series of photographs and determine whether the State established the predicate required for photographs.

graph. Both were relevant because they established appellant's identity as the perpetrator of the offense. Moreover, Richard Kozlovsky, the loss-prevention manager at Sears, testified that both the videotape and the photograph were true and accurate representations of what they purported to be. He said that the videotape provided a fair and accurate depiction of the way the store looked on the day this incident occurred. Kozlovsky testified that the photograph was taken at the time of the incident and that the person in the photograph was appellant. Kozlovsky also identified appellant in the videotape recording.

We conclude that the trial court did not err in admitting the videotape and the photograph into evidence. We overrule appellant's fourth and fifth points of error.

CONCLUSION

We affirm appellant's conviction for credit card abuse in cause number F90–04003–RT. We reverse her conviction for theft from the person in cause number F90–04000–RT and enter a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 18–19, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978); *Windham v. State,* 638 S.W.2d 486, 488 (Tex.Crim.App.1982); *Gardner v. State,* 736 S.W.2d 179, 183 (Tex.App.—Dallas 1987), *aff'd,* 780 S.W.2d 259 (Tex.Crim.App.1989).