NO. 07-03-0332-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 16, 2005

_____

MELINDA ANN MULLINS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. B14944-0305; HON. ROBERT W. KINKAID, JR., PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

In this appeal, appellant Melinda Ann Mullins challenges her conviction of theft from the person, as well as the resulting jury-assessed punishment of 18 months imprisonment in a state jail facility. In doing so, she presents two points for our decision. She asks us to determine whether 1) the evidence was sufficient to find appellant guilty of the crime of theft from the person where the purse in question was taken from a laundry folding table not within the immediate reach of the victim and where there was no marked risk of fright

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

or injury to the victim; and 2) the evidence was sufficient to show that appellant was a party to the crime when she was outside of the laundromat, though she knew the thief's intention but did not encourage or discourage the theft, and left with the thief from the laundromat and permitted him to go into her home. Answering both questions in the affirmative, we affirm the judgment of the trial court.

The nature of appellant's arguments require us to recite the pertinent parts of the evidence in some detail. On the evening of April 30, 2003, Elena Molina, her sister, and children were at the laundromat at 12th Street and Columbia in Plainview doing laundry. Molina was putting her clothes in the dryer when appellant and James Turk entered the laundromat, bought a Dr. Pepper from a vending machine, and went back outside to smoke a cigarette. Molina had not known either of them before that evening. The pair were outside the laundromat for about 20 minutes.

Molina had brought with her a purse that contained about $1,200 in cash. She had placed the purse on a folding table within an arm's length of her. Turk re-entered the laundry mat, snatched Molina's purse, and ran. Molina attempted to catch Turk and retrieve her purse but was unable to catch him. Thereafter, with the assistance of the police, Molina recovered her purse with everything except about $50 to $150.

Gilbert Gonzales testified that on the evening in question he was in the front yard of his mother's house which was located about a half block from the laundromat. He saw appellant and Turk walk toward the laundromat. Later, as he was driving away from his mother's house, he saw appellant and Turk run quickly from the laundromat. He thought he saw the man carrying something like a bag and appellant was running alongside him. After Gonzales saw appellant and Turk running from the scene, he saw Molina outside the

2

laundromat using her cell phone. She told Gonzales that the fleeing pair had stolen her purse.

Sophia Jaramillo, a Plainview police officer, testified that on the evening in question, she responded to a call about a theft from the laundromat. She was told that the suspects were running down the street and she was given a description of the pair. She took off along the street to see if she could find the suspects. After receiving information from a couple of other witnesses, Jaramillo, together with police sergeant Balderas, went to appellant's residence. As they approached her residence, appellant, appearing out of breath, appeared from behind a fence. She was dressed in the black shorts that had been described as her attire by the victim. Jaramillo said she could not tell if appellant came from inside or outside of the house.

When told by Jaramillo about the purse theft, the officer said that appellant acted as if she knew nothing about it. Appellant told the officers that Turk was in her house and the officers asked her to call him out. Appellant stuck her head in the front door and told Turk to come out. Initially, however, Turk did not do so, and Jaramillo went to the back door to prevent Turk from escaping that way. As she did so, the officer observed Turk looking out the back bedroom window. Jaramillo surmised that Turk was either trying to get out of the house or trying to hide something. When Turk ultimately came out of the house, he was wearing clothes that answered the description of the ones the victim said the man who snatched her purse was wearing.

Turk, appearing to be nervous and sweaty, was queried about the purse theft and told the officers he knew nothing. Appellant then gave the officers permission to search her

3

house and went in with Balderas while Turk and Jaramillo remained outside. As they did so, Jaramillo observed that Turk continued to be nervous and fidgety.

Balderas found appellant's purse under a mattress in the back bedroom of appellant's residence. Jaramillo opined that appellant did not seem to be surprised the purse was found in her home. As Balderas came out of the house carrying the purse, Turk began to run, but was successfully pursued by Jaramillo. After being subdued, Turk was read his *Miranda* rights. When interrogated by the officers, Turk denied taking the purse and blamed appellant. He averred that appellant had hidden money from the purse on the porch and, Jaramillo said, Balderas found $100 on the porch. Although no money was found on appellant, the officers found $300 in Turk's wallet and $100 on top of the refrigerator.

Turk was taken to the Hale County jail. After he was removed from the patrol car, an additional sum of money was found in the car. Appellant was also detained and taken to the police department where she gave a written statement. In the statement, appellant said that she went to the laundromat with Turk to get a Dr. Pepper. After they went outside, she said, Turk told her he was going back to steal a purse, that he did so, and they went to her house. She denied that she had anything to do with the taking of the purse. She said she was returning home when Turk came running up beside her and "told [her] to run" and he "hid behind [a] garage house." Appellant also averred that Turk hid the purse in her house.

As we have noted above, in each of her points, appellant argues the evidence is both legally and factually insufficient to sustain her conviction. The standards by which such contentions are determined are by now axiomatic. In considering a legal sufficiency

4

challenge, an appellate court must examine the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). In reviewing a factual sufficiency question, we view the evidence without the prism of in the light most favorable to the verdict and only set aside that verdict if the evidence is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust *Id.; Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

Theft from the person as proscribed by section 31.03(e)(4)(B) of the Texas Penal Code seeks to punish conduct that involves the risk of injury inherent in taking property from a person. *See Earls v. State*, 707 S.W.2d 82, 86 (Tex. Crim. App. 1986). Actual touching during the act is not required in order to satisfy the statutory requirements. *Id.* at 85. For example, in *Mack v. State*, 465 S.W.2d 941 (Tex. Crim. App. 1971), a purse snatched from a shopping cart while the victim was distracted and turned away from the purse, but who had her hand on the cart, was held sufficient to justify a conviction under the statute. *Id.* at 941-42. In *Mack,* the court was considering the precursor of the present statute, but its application is applicable to the current statute which is essentially the same.

In considering whether appellant's conduct was within the purview of the statute, we examine the court's decision in *Farrell v. State,* 837 S.W.2d 395 (Tex. App.--Dallas 1992), *aff'd,* 864 S.W.2d 501 (Tex. Crim. App. 1993). In that case, the victim's wallet had also been placed on a shopping cart, but she was two or three feet from the cart, admitted that she was not within arm's reach of the cart, her back was to the cart when the wallet was

5

taken, and she did not discover the theft until several minutes later. Under those circumstances, the *Farrell* court concluded the wallet was not taken "from her person" within the purview of the statute. *Id.* at 398. En route to its decision, the court noted the intent of the statute in making theft from the person a felony regardless of the value of the property taken and that the wallet was not taken "from her person, her grasp, or from her immediate possession." *Id.* Under those circumstances, the court concluded that the circumstances of the taking did not involve "the risk of injury inherent in taking property from a person" necessary to justify a conviction under the statute. *Id.*

In the instant case, the evidence showed that Molina was within an arm's grasp of the purse when taken, she had watched Turk walk through the building and circle back to where she was folding clothes, she witnessed him take the purse from the table, and she made an attempt to catch him and retrieve her purse. Under these circumstances, the risk of injury incident to the taking was sufficient to satisfy the statutory requirements and justify the jury finding of theft from the person. Appellant's first point is overruled.

Reiterated, in her second point, appellant asserts the evidence is legally and factually insufficient to support a finding that appellant was a party to the theft. Section 7.02 of the Texas Penal Code describes the circumstances by which an individual may be held responsible for the criminal conduct of another. *See* Tex. Pen. Code Ann. § 7.02 (Vernon 2003). As relevant here, the statute provides that a person is criminally responsible for another's conduct if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

6

Standing alone, proof that an accused was personally present at the scene of the crime or assisted the primary actor in making his getaway is insufficient. *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.–Austin 1997, pet. ref'd). The evidence must show that at the time of the incident, the parties were acting together, with each contributing some part towards the execution of the common purpose. *Brooks v. State,* 580 S.W.2d 825, 831 (Tex. Crim. App. 1979). Evidence is legally sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement. *Barnes v. State,* 56 S.W.3d 221, 238 (Tex. App.–Fort Worth 2001, pet. ref'd). Whether an accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by the actions of the accused that show an understanding and common design to commit the offense. *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985). Flight from the scene is a circumstance from which an inference of guilt may be drawn. *Cantrell v. State*, 731 S.W.2d 84, 92 (Tex. Crim. App. 1987). In determining the sufficiency of the evidence to show an accused's intent and when faced with a record that supports conflicting inferences, the reviewing court must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Reviewed, the evidence shows that appellant accompanied Turk when he went to the laundromat, went into the building but did not attempt to wash clothes, bought a Dr. Pepper from the vending machine and then went outside to smoke. At the time they were in the building, Molina had her purse on the table within arm's reach. In her statement,

albeit with a denial that she had anything to do with the crime, appellant admitted that Turk told her he was going back inside to steal the purse. Appellant remained outside while Turk re-entered the building, snatched Molina's purse, and ran. Although she said in her statement that she had begun to walk home before Turk stole the purse, Gonzales testified that he saw both appellant and Turk running from the scene. Moreover, the record shows that Turk had taken refuge in appellant's house subsequent to running from the scene of the crime. Considering all of these factors, the jury could reasonably have concluded that appellant knew of Turk's intent to steal the purse, that she deliberately stayed outside the building as a lookout, and that she ran with him and gave him refuge in her house after the theft. While other conclusions could be drawn from the evidence, we cannot say that the jury's resolution of the fact questions presented in this record was outside of their classic discretion to determine and resolve factual questions, and that the finding of guilt was not sufficiently supported by the record. Accordingly, appellant's second point is overruled.

In sum, all of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd<br>
Senior Justice

Do not publish.