In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00426-CR**
**NO. 09-16-00427-CR**

_____

**TADARION DAQUIN SIMON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 16-09-10942-CR & 16-09-10940-CR**

**MEMORANDUM OPINION**

Arguing that the evidence admitted during his trial cannot support the jury's verdicts finding him guilty of the crimes of theft from a person and robbing a disabled person, Tadarion Daquin Simon seeks to reverse his convictions based on the issues he presents in his brief.[1] *See* Tex. Penal Code Ann. § 29.03 (West 2011),

---

[1] The judgment in trial court Cause Number 16-09-10942-CR is the judgment relevant to Simon's conviction for theft from a person. The judgment in trial court

§ 31.03 (West Supp. 2018).[2] Regarding his conviction on the charge of theft from a person, Simon argues that the evidence admitted in his trial shows that M.M.'s[3] purse was in her shopping cart and not physically in her possession when he took it. *See id.* § 31.03(e)(4)(B) (elevating theft to a felony if the property "is stolen from the person of another"). According to Simon, without evidence showing that the purse was on M.M.'s person, the State failed to prove that he committed that form of theft.

Turning to Simon's conviction for robbing a disabled person, Simon argues that the jury could not have found, beyond reasonable doubt, that he placed D.M. in fear of or caused him to suffer a serious bodily injury, or that Simon exhibited a deadly weapon while taking M.M.'s purse, or that D.M. is a disabled person. *Id.* § 29.03 (1)-(3) (setting out the elements that the State must prove the aggravating element that elevates theft to aggravated robbery).

Cause Number 16-09-10940-CR is the judgment relevant to Simon's conviction for robbing a disabled person.

[2] Although the Legislature amended the theft statute after Simon stole M.M.'s purse, the Legislature did not change the sections of the statute that are relevant to issues Simon has raised in his appeals. For that reason, we cite the current version of the statute when referring to it in the opinion.

[3] To protect the privacy of the two victims identified in the indictments, we identify them by using their initials. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"

## Background

During the trial, M.M. testified that in December 2015, someone, later identified by police as Simon, took her purse from a grocery cart while she was unloading her groceries into her SUV. According to M.M., her son, D.M.,[4] saw the man steal her purse, and he jumped out of the SUV, running after the man who took her purse. M.M. explained that before D.M. could catch him, someone driving a getaway car pulled up, stopped, and the man jumped into the car. According to M.M., when the passenger door to the getaway car opened, it hit D.M. on his head.

The evidence in the trial shows that D.M. was fifty-six years old when Simon stole M.M.'s purse. The jury heard M.M. testify about D.M.'s physical and mental limitations in the trial. For example, M.M. told the jury that D.M. had what she characterized as a "hard birth" and that he has always lived with her. She explained that D.M. cannot speak to anyone but her and that he lives with her because he needs her help. M.M. also testified that D.M.'s developmental problems made it hard for him, in some ways, to get around. M.M. testified that D.M. has autism, which she

---

[4] D.M. did not testify in the trial. In a hearing without the jury present, D.M. nodded when asked if it was hard for him to talk. He conveyed that it would be too difficult for him to testify. In the hearing, D.M.'s mother, M.M., told the trial court that D.M. has autism, suffered injuries when he was born, and that it is difficult for him to speak to others. Based on the information from the hearing, the trial court advised the parties that based on what she had seen, D.M. could not effectively communicate with others so he need not testify in the trial.

explained was the reason that D.M. was unable to talk with others about what happened to him.

Several witnesses in the case gave testimony that is consistent with M.M.'s account about D.M.'s limited ability to speak. For instance, the testimony of one of the paramedics that treated D.M. revealed that D.M. could not communicate with him when he treated him in the parking lot. The paramedic testified that D.M. communicated with him through his mother. One of the deputies involved in the investigation of the incident testified that M.M. told him that "[D.M.] has severe autism." The same deputy described D.M. as a frail man who "has a little bit of trouble walking."

The testimony of three witnesses, M.M. and two of the police officers, gave testimony that led the jury to conclude that D.M. had suffered a bodily injury during the theft. M.M. testified that she saw the passenger door of the getaway car hit D.M. on the head while he was chasing Simon. Shortly after that, M.M. noticed that D.M. had a red spot near his eye where the door hit him on the head. One of the officers who investigated the theft testified that she noticed that D.M. had a scrape on his elbow. Another of the investigating officers testified that he understood that a car door hit D.M. in the head, and he saw D.M., at times, rubbing his head. According to the officer, D.M. seemed "very confused and stunned."

4

There is also evidence in the record tending to show D.M. did not have a major injury from the blow he suffered on his head. One of the paramedics who treated D.M. testified that he noticed no marks on D.M.'s body and that he did not think that D.M. had suffered any major injuries. Another paramedic involved in D.M.'s treatment agreed that D.M. suffered no major injuries. Even so, the paramedic testified that D.M., in her opinion, should go to a doctor for a more complete evaluation.

The trial court admitted the ambulance records into evidence in the trial. These records show that D.M. had no subjective or objective indications that he suffered an injury. Yet the same records do not rule out the possibility that D.M. suffered some injury: the records state that D.M. received possible injuries "from blunt trauma that are undetectable by EMS[.]" Nothing in the record shows that the paramedics who testified in the trial were familiar with the definition used in the Penal Code for the term *bodily injury*.[5]

Analysis

In the first two issues of his brief, Simon argues that the evidence presented at trial failed to prove that he committed the crimes of theft from a person and of robbing a disabled person. When reviewing claims asserting that insufficient

---

[5] Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2018).

evidence supports a conviction, we apply the standards of review established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing the evidence from the trial, we view the evidence "'in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.'"[6] We must keep in mind that "[t]he jury is the sole judge of credibility and weight to be attached to the testimony of witnesses."[7] In its role as the factfinder, a jury may choose to believe all, some, or none of the testimony that it hears in a trial.[8] A jury may draw several inferences from the evidence if the inferences that it draws are reasonable and supported by the evidence admitted in the trial.[9] If the record supports conflicting inferences, we must presume the jury resolved such conflicts in favor of its verdict, and we must defer to the jury's resolution of the dispute when the resolution it reached is supported by the evidence.[10] "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an

---

[6] *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Jackson*, 443 U.S. at 318-19).

[7] *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319).

[8] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

[9] *Temple*, 390 S.W.3d at 360 (citing *Jackson*, 443 U.S. at 319).

[10] *Id*. (citing *Jackson*, 443 U.S. at 326).

essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt."[11]

## Theft from a Person

In his first issue, Simon argues the evidence failed to prove that he took M.M.'s purse from her person.[12] According to Simon, the evidence shows that the purse he took was in M.M.'s shopping cart and not on her person when he took it.[13]

A person commits the crime of theft from a person if "he unlawfully appropriates property with intent to deprive the owner of property."[14] Under the Penal Code, the appropriation of property by another is unlawful if "it is without the owner's effective consent[.]"[15] If the property is stolen "from the person of another," the offense is a state jail felony, regardless of the value of the property stolen.[16] The

---

[11] *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

[12] *See* Tex. Penal Code Ann. § 31.03(e)(4)(B).

[13] Simon does not argue that the State failed to prove that M.M. was an *elderly person* when he took her purse. M.M. testified about her age at the time of the trial, and her testimony allowed the jury to infer that she was more than sixty-five years old in December 2015 when Simon took her purse.

[14] *Id.* § 31.03(a).

[15] *Id.* § 31.03(b).

[16] *Id.* § 31.03(e)(4)(B).

penalty for the crime is a third-degree felony if the victim of the theft is an *elderly individual*, a term defined to mean a person who is "65 years of age or older.[17]

The proof required to prove the crime of theft from a person does not require evidence that the defendant stole the object from the clothes the victim was wearing or from her hand if the evidence shows the defendant took the item from an object like a shopping cart under circumstances that show the cart was in the person's immediate possession when the theft occurred.[18] In *Mack v. State*, 465 S.W.2d 941, 941 (Tex. Crim. App. 1971), the victim was standing next to the cart when the defendant took the victim's purse from the cart. In his appeal, Mack argued that the evidence failed to show that he took the purse from the victim because the victim testified that she had the purse in her cart.[19] The Court of Criminal Appeals sustained Mack's conviction, explaining that under the circumstances, the evidence

---

[17] *Id*. § 22.04(c)(2) (West Supp. 2018) (defining *elderly individual*), § 31.01(10) (West Supp. 2018) (stating that *elderly individual* has the meaning assigned to it in section 22.04(c)), § 31.03(f)(3)(A) (West Supp. 2018) (elevating the offense to the next higher category if the owner of the property is an *elderly individual*).

[18] *See Mack v. State*, 465 S.W.2d 941, 942 (Tex. Crim. App. 1971) (concluding that the theft of a purse from a shopping cart is theft from a person when the circumstances show the object in the cart was within the victim's reach).

[19] *Id*. at 942.

established that the purse in the shopping cart, within the victim's reach, and the victim immediately noticed that her purse was gone.[20]

Yet if the evidence shows that the defendant took the victim's property from behind the victim's back, the evidence is generally viewed as insufficient to support a conviction for the crime of theft from a person.[21] In *Farrell v. State*, 837 S.W.2d 395 (Tex. App.—Dallas 1992), *aff'd*, 864 S.W.2d 501 (Tex. Crim. App. 1993), the Dallas Court of Appeals reversed and rendered a judgment of acquittal where the evidence revealed that the defendant stole the victim's wallet from a shopping cart while the victim had her back turned and did not immediately realize that her wallet was missing.[22] The *Farrell* Court explained that the defendant approached the victim while she was shopping for groceries and asked if she knew where the paper towels were located.[23] The victim turned her back to her shopping cart and took several steps to find a roll of paper towels.[24] While behind the victim's back, the defendant took the victim's wallet from the victim's purse, which was sitting in the cart.[25]

---

[20] *Id*. at 942.

[21] *Farrell v. State*, 837 S.W.2d 395 (Tex. App.—Dallas 1992), *aff'd*, 864 S.W.2d 501 (Tex. Crim. App. 1993).

[22] *Id.* at 396.

[23] *Id*. at 397.

[24] *Id*.

[25] *Id*.

Shortly thereafter, shopping on the next isle, the victim noticed her wallet was not in her purse.[26] The Dallas Court of Appeals concluded that, under these circumstances, "[t]he evidence adduced at trial fails to establish that [the victim's] wallet was taken from her person, from her grasp, or from her immediate possession."[27]

Claiming that the *Farrell* Court should have convicted the defendant of the lesser-included offense of theft, the State appealed the decision to the Court of Criminal Appeals.[28] Concluding that "the State did not raise the [issue asking to reform the appellate court's judgment in] the Court of Appeals," the Court of Criminal Appeals affirmed the judgment.[29]

Factually, the circumstances under which the theft occurred in the case now before us on appeal are similar to the situation presented in *Mack*.[30] Here, the evidence admitted in the trial allowed the jury to infer that the shopping cart was still in M.M.'s immediate possession when the crime occurred. According to M.M., she was unloading her cart when she saw the defendant running away from it with her

---

[26] *Id.*
[27] *Id.* at 398.
[28] *Farrell v. State*, 864 S.W.2d 501 (Tex. Crim. App. 1992).
[29] *Id.* at 503.
[30] *See Mack*, 465 S.W.2d at 942.

purse. Unlike the circumstances in *Farrell*, the evidence does not show that M.M. did not immediately realize that someone had stolen her purse.[31]

We conclude that the evidence admitted during Simon's trial supports the jury's conclusion that Simon took M.M.'s purse from her immediate possession.[32] Because the evidence supports Simon's conviction under section 31.03(e)(4)(B) of the Penal Code, we overrule Simon's first issue.

Aggravated Robbery of a Disabled Person

In issue two, Simon argues the evidence admitted in his trial cannot support his conviction for robbing a disabled person.[33] Under Texas law, an ordinary robbery can become an aggravated robbery if the State proves that, while committing a theft, the defendant caused a *disabled person* to suffer a bodily injury.[34] Under the Penal Code, a *disabled person* is "an individual with a mental, physical, or developmental disability who is substantially unable to protect himself from harm."[35] The indictment on which Simon went to trial alleges that Simon, while committing a theft, caused D.M.—a disabled person—to suffer a bodily injury.

---

[31] *See Farrell*, 837 S.W.2d at 397.
[32] *See Temple*, 390 S.W.3d at 360.
[33] *See* Tex. Penal Code Ann. § 29.03(a)(3).
[34] *Id*. § 29.03(a)(3)(B).
[35] *Id*. § 29.03(c).

In his appeal, Simon argues the State failed to prove that D.M. is disabled and failed to prove that D.M. suffered a bodily injury while Simon committed the theft. Yet the evidence before the jury in Simon's trial allowed the jury to conclude that D.M. suffers from autism, a disorder that witnesses explained left D.M. substantially without the ability to speak to anyone other than his mother. The definition of the term *disabled person* under section 29 of the Penal Code includes developmental disabilities.[36] So the testimony before the jury about D.M.'s autism authorized the jury to conclude that D.M. qualified as a *disabled person* if we measure the evidence about D.M. in the trial based on the definition found in the Penal Code.[37] A disability in communicating with others is a disability of the type the jury could have concluded made D.M. "substantially unable to protect himself from harm."[38] For example, the jury could have concluded that D.M. could not have called to others for help had Simon decided to turn around and fight.

We view the evidence admitted in a trial when reviewing it upon appeal in the light that most favors the jury's verdict.[39] Because the jury's inference from the

---

[36] *See id.* § 29.03(c).
[37] *Id.*
[38] *Id.*
[39] *Jackson*, 443 U.S. at 319; *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

evidence about D.M.'s condition that he is substantially unable to protect himself is not one that is irrational based on the evidence about D.M.'s disability, we conclude that the jury's finding that D.M. is a *disabled person* under Chapter 29 of the Penal Code is a finding that is supported by the evidence.[40]

Simon also argues that the evidence does not support the jury's conclusion that D.M. suffered an injury while Simon was entering the getaway car.[41] Under the Penal Code, the term *bodily injury* means "physical pain, illness, or any impairment of physical condition."[42] Simon suggests that because D.M. did not testify in the trial, the evidence before the jury failed to establish that he suffered a bodily injury when he took M.M.'s purse. Simon also points to the testimony that D.M. lacked any visible signs showing that he was injured. Both paramedics testified that when they examined D.M. in the parking lot, they found no signs of trauma, that he had no major injuries, and that D.M. did not appear to be in pain. In response, the State argues that M.M.'s testimony that she saw the door of the getaway car strike D.M. on the head and saw a red mark on D.M.'s face is evidence that supports the jury's

---

[40] *See Temple,* 390 S.W.3d at 363 (explaining that the appellate courts do not act as factfinders in reviewing the evidence the jury considered in a trial).

[41] *See* Tex. Penal Code Ann. § 29.03(a)(3) (West 2011) (allowing the State to establish that an aggravated robbery occurred by proving that the defendant caused a bodily injury to a person at least sixty-five years old or to a *disabled person*).

[42] *Id.* § 1.07(a)(8).

conclusion that D.M. suffered a *bodily injury* when the evidence in the trial measured by the definition for *bodily* injury that is found in the Penal Code.[43]

In evaluating the respective arguments, we note that the definition the Legislature adopted for the term *bodily injury* is purposefully broad and can include minor contacts should those contacts amount to more than a mere offensive touching.[44] The term *physical pain*, one of the elements included in the broader definition of *bodily injury*, is a term of common use.[45] Ordinarily, jurors can understand whether an injury occurred based on a description of the events that caused the injury the State has claimed occurred.[46] And a jury may infer that a victim experienced physical pain based on a description about the mechanics of how an injury occurred.[47] Thus, evidence describing the mechanics of a blow that left a victim cut, scraped, or bruised is the type of evidence jurors can use to infer that the victim also experienced physical pain.[48] To establish that a victim suffered a bodily

---

[43] *Id.*

[44] *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

[45] *Id.* at 787.

[46] *Id.*

[47] *Id.*

[48] *See Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (explaining that evidence showing the victim suffered a cut on his arm established that a bodily injury occurred); *Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.—El Paso 2002, no pet.) (evidence showing the victim had bruised and swollen lips sufficient to prove that a bodily injury occurred);

injury the State need only show that the victim experienced some pain, as "[a]ny physical pain, however minor, will suffice[.]"[49]

From M.M.'s testimony describing the mechanics of D.M.'s alleged injury—a car door hitting him on the head—coupled with M.M.'s testimony that she saw a mark on D.M.'s face, the jury could infer that the blow to D.M.'s head caused D.M. to experience pain. There was testimony in the trial showing that witnesses saw D.M. rubbing his head and that D.M. appeared confused. This evidence offers additional support for the jury's inference that the blow to D.M.'s head caused him to experience pain.[50] Because the jury could have concluded the type of injury described resulted in some pain, we overrule Simon's second issue.[51]

---

App.—Corpus Christi 1988, pet. ref'd) (evidence that victim suffered bruises and a muscle strain sufficient to prove that a bodily injury occurred).

[49] *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

[50] *See Bin Fang v. State*, 544 S.W.3d 923, 927-28 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (evidence of bodily injury sufficient where the testimony of the officers who responded to a reported altercation observed the victim with scratches, a bruise, and a bloody mouth and nose even though she told officers when they arrived that everything was fine); *Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (explaining that although the victim did not expressly testify that he experienced pain when the defendant butted him in the head, evidence showing that the victim bled afterward from the bridge of his nose was sufficient evidence to support the jury's finding that a personal injury occurred).

[51] Given our conclusion that Simon's conviction is sustainable under section 29.03(a)(3)(B) of the Penal Code, we need not resolve his remaining arguments claiming the evidence fails to support the jury's findings on two of the other ways section 29.03 allows the State to prove that an aggravated robbery occurred. Thus, we need not address whether the evidence also established that an aggravated

For the reasons we have explained above, we affirm the judgments rendered in trial court Cause Numbers 16-09-10942-CR and 16-09-10940-CR.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 30, 2018
Opinion Delivered October 24, 2018
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

robbery occurred under either section 29.03(a)(1), which requires proof that a serious bodily injury occurred, or under section 29.03(a)(2), which requires proof that the defendant used or exhibited a deadly weapon in committing the robbery. *See* Tex. Penal Code Ann. § 29.03(a)(1), (2) (West 2011).