STATE of Wisconsin, Plaintiff-Respondent,

v.

Jonathan J. ENGLISH-LANCASTER, Defendant-Appellant.†

Court of Appeals

*No. 01–1455–CR. Submitted on briefs January 25, 2002.— Decided February 20, 2002.*

2002 WI App 74

(Also reported in 642 N.W.2d 627.)

† Petition to review denied 4-22-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sandra L. Nowack*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1.  SNYDER, J.  Jonathan J. English-Lancaster appeals from a judgment of conviction for second-degree sexual assault and an order denying his motion for postconviction relief. English-Lancaster argues that the trial court should have declared a mistrial when a witness testified as to other acts evidence in violation of a pretrial court order to the contrary based upon a stipulation entered into by both English-Lancaster and the State. English-Lancaster argues that the curative jury instruction provided by the court was insufficient to cure the error. The State contends that English-Lancaster has waived this issue because he did not enter a contemporaneous objection to the evidence in the trial court. Alternatively, the State argues that English-Lancaster is judicially estopped from raising this argument on appeal. We reject the State's contemporaneous objection argument but we agree with its judicial estoppel argument.

¶ 2.  English-Lancaster further argues that his judgment of conviction should be reversed in the interest of justice because his trial counsel gave him erroneous information during plea negotiations regarding the maximum penalty available for the plea offer from the State. We conclude that this error was corrected and English-Lancaster was provided the correct information prior to trial. We therefore affirm the judgment and order.

## FACTS

¶ 3.  On January 31, 2000, English-Lancaster was charged with second-degree sexual assault, by use or threat of force, contrary to WIS. STAT. § 940.225(2)(a)

391

(1997–98).[1] The complaint alleged that on October 23, 1999, English-Lancaster, an assistant manager at a convenience store, forced a fellow employee, S.G., to have sexual intercourse. An information filed on March 3, 2000, alleged and charged the same.

¶ 4. On April 12, 2000, English-Lancaster filed a motion in limine seeking to prohibit the State from "introducing any evidence concerning alleged acts of criminal or other misconduct by the defendant either prior to or following the date of the alleged offense charged in the complaint." At a motion hearing on May 31, 2000, trial defense counsel conceded that the State had not indicated that it would be introducing other acts evidence but he was concerned that the State's discovery materials alluded to allegations made by another individual which counsel believed could be prejudicial. Prosecutor Dennis Krueger confirmed that the police had interviewed another person in connection with the investigation but advised the trial court that the State did not intend to introduce that witness's testimony as part of its case-in-chief. The trial court then granted the defense's motion, stating, "Well, at least as to the state's case-in-chief, the court will grant the motion *in limine,* because it's been indicated there won't be other acts introduced."

¶ 5. On June 9, 2000, four days prior to trial, defense counsel indicated that English-Lancaster had a motion he wished to bring before the court himself. English-Lancaster asked for an adjournment in order to procure additional funds to hire a private investigator. The trial court denied this motion. At the conclusion of this hearing, defense counsel indicated that the out-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

come of the motion might have an effect on plea negotiations and that the matter could potentially be resolved without a trial. The trial court indicated that a change of plea could be accommodated on the day of trial; however, the court would consider imposing jury costs against English-Lancaster.

¶ 6.   On June 12, 2000, the day before trial, prosecutor Krueger informed defense counsel that he would not be handling the trial. A jury trial began on June 13, 2000. Defense counsel approached the new prosecutor, Lloyd Carter, and asked whether the case could be resolved without a trial. Carter informed defense counsel that "there was an offer out there available for . . . third-degree sexual assault." According to Carter, defense counsel responded that English-Lancaster did not want to plea to a charge that would expose him to ten years' imprisonment. Defense counsel later learned that the maximum penalty for third-degree sexual assault was five years, not ten years.

¶ 7.   Sometime that morning prior to trial, defense counsel informed English-Lancaster of his mistaken understanding of the maximum penalty for third-degree sexual assault, that the maximum penalty was actually five years, not the ten years he had originally declared. At the postconviction hearing, English-Lancaster testified that defense counsel told him that the actual penalty was five years and then started preparing for trial without discussing whether the plea offer was still available. Defense counsel testified that he specifically asked English-Lancaster whether he wished to accept the State's plea offer in light of the correct penalty information regarding third-degree sexual assault. Defense counsel testified that English-Lancaster insisted that he was innocent, that he was rejecting all plea offers and that he wanted a trial.

¶ 8.   Trial began the afternoon of June 13, 2000. Before jury selection began, defense counsel informed the court of the error he had made in advising his client:

> [DEFENSE COUNSEL]: Very briefly, Judge, I do apologize for not doing this earlier, I did have a discussion with Attorney Carter this morning. I had mistakenly informed my client of the potential penalties on the state's offer. We did rectify that situation this morning. I don't know that there was any reliance on my original statement of the maximum penalties; nevertheless, Mr. English-Lancaster did reject the state's offer regardless of the penalties.
>
> THE COURT: Sir, you don't need to make any comment, but if you want to — did you want to make any comment on those remarks of your attorney?
>
> [ENGLISH-LANCASTER]: No, sir.

¶ 9.   The trial then continued. During the State's case-in-chief, prosecutor Carter called City of New Berlin Police Detective Ryan Park to the stand. Park testified that during his interview of English-Lancaster:

> I had asked, based upon my interview with [S.G.] and another employee where I was gathering a history of kind of the relationship between these employees, I had asked Mr. English-Lancaster if he had ever made comments of a sexual nature to [S.G.] and another employee, and he stated that he had not and that he always maintained a professional — he always remained professional at the work place.

Prosecutor Carter then asked Park whether he asked English-Lancaster any other questions about contact between him and S.G. Park testified:

> Yes, I did. I had asked him if he had ever touched the buttocks of either [S.G.] or this other employee, and he responded "no." Which I then followed up with another

question, which was would there be any reason why, when I'm reviewing the videotape surveillance, would there be any reason why I would see you touching the buttocks of either [S.G.] or this other employee. And he said he didn't know, and I asked him if that was a possibility, something that I may see on the video, and he said, "Yes, it's a possibility."

Defense counsel did not enter a contemporaneous objection to this testimony.

¶ 10. However, shortly thereafter during a court-initiated recess, defense counsel complained that Park's testimony unwittingly violated the court's ruling on the motion in limine because it referred to English-Lancaster's alleged conduct toward another employee; defense counsel asked the court to instruct the jury to disregard that testimony. Prosecutor Carter indicated that he was unaware of the court's previous ruling and the trial court agreed that "there was going to be no mention of any other incidents." The parties then discussed an appropriate curative instruction. Defense counsel did not request a mistrial, only the curative instruction.

¶ 11. The trial court eventually instructed the jury as follows: "Detective Park made mention of another employee. You are to disregard that entirely as it has no bearing on this case." Defense counsel accepted the curative instruction offered by the court.

¶ 12. On June 15, 2000, the jury found English-Lancaster guilty of second-degree sexual assault and on August 17, 2000, the trial court sentenced him to twelve years in prison. On March 22, 2001, English-Lancaster filed postconviction motions asking the court to vacate his conviction and allow him to accept the plea agreement offered by the State prior to trial or, in the alternative, vacate the conviction and order a new trial.

English-Lancaster argued that in rejecting the State's plea offer, he had relied on the erroneous information provided by his defense counsel that the maximum penalty was ten years when the correct maximum penalty was five years. He also argued that a cautionary instruction was insufficient to cure the error of the introduction of other acts evidence and a mistrial was necessary.

¶ 13.  The trial court denied these motions after a hearing. English-Lancaster appeals from his judgment of conviction and the order denying the postconviction motions.

## DISCUSSION

¶ 14.  English-Lancaster argues that the trial court's curative instruction could not erase the prejudice resulting from the police officer's testimony concerning other acts evidence of sexual misconduct towards another employee. The State responds that English-Lancaster has waived this issue because he did not contemporaneously object when the evidence was introduced. Alternatively, the State contends that English-Lancaster is judicially estopped from raising the issue.

■■■

¶ 15.  A contemporaneous objection enables the litigants, the lawyers and the trial court to make a record regarding the issue when the recollections of everyone are still fresh. *See State v. Davis*, 199 Wis. 2d 513, 518, 545 N.W.2d 244 (Ct. App. 1996). Enforcement of the contemporaneous objection rule encourages the parties to view the trial as an event of significance that should be kept as error-free as possible. *Id.* The rule promotes both efficiency and fairness. *State v. Erickson,*

227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). A contemporaneous objection puts both the parties and the court on notice of the disputed issue, thereby providing a fair opportunity to prepare and address the issue in a way that most efficiently uses judicial resources. *Id.* If this rule of waiver did not exist, a party could lie in the weeds by not objecting and then belatedly raise the issue when it was advantageous to do so. *Id.*

■

¶ 16.  The policies underpinning the contemporaneous objection rule are not present in this case. English-Lancaster properly raised the other acts issue in advance of trial via a motion in limine. *See* WIS. STAT. § 971.31(1). At the pretrial hearing, the State stipulated that it would not use any other acts evidence as part of its case-in-chief. Based on this stipulation, the trial court entered an order barring the use of the other acts evidence. This was an efficient and fair way to handle this issue.

¶ 17.  When the State violated the stipulation and the court's order at trial, English-Lancaster did not immediately object. Instead, he first raised the issue when the jury was next excused. The State's argument for application of the contemporaneous objection rule puts English-Lancaster in a classic "Catch-22" position. By not objecting, English-Lancaster is held to waiver. By objecting, English-Lancaster draws the jury's attention to the very prejudicial other acts evidence that the trial court had already ruled inadmissible. Recalling that one of the purposes of the contemporaneous objection rule is fairness (*see Davis*, 199 Wis. 2d at 518), we will not apply the rule to permit such an unfair dilemma. The facts of this case do not demonstrate that English-Lancaster tactically laid in the weeds and then raised the issue later only when it was to his advantage.

*See Erickson*, 227 Wis. 2d at 766. We reject the State's contemporaneous objection argument.

¶ 18.   That brings us to the State's alternative argument that English-Lancaster is judicially estopped from making his argument. Judicial estoppel is an equitable rule applied at the discretion of the court to prevent a party from adopting inconsistent positions in legal proceedings. *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996). The purpose of judicial estoppel is to preserve the integrity of the judicial system and prevent litigants from playing "fast and loose" with the courts. *Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523 N.W.2d 138 (Ct. App. 1994).

¶ 19.   In *Petty*, the supreme court adopted three elements for invoking judicial estoppel:

> First, the later position must be clearly inconsistent with the earlier position; second, the facts at issue should be the same in both cases; and finally, the party to be estopped must have convinced the first court to adopt its position—a litigant is not forever bound to a losing argument.

*Petty*, 201 Wis. 2d at 348 (citation omitted). It is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous and then after the court maintains that position, argue on appeal that the action was error. *State v. Gove*, 148 Wis. 2d 936, 944, 437 N.W.2d 218 (1989).

¶ 20.   English-Lancaster's request for a new trial because of testimony regarding other acts is barred by the doctrine of judicial estoppel. The police officer's testimony did violate the court's ruling regarding other

acts evidence. However, defense counsel did not enter a contemporaneous objection to the testimony; English-Lancaster admits that such an objection "would have risked calling the jury's attention to the acts involving the other employee, thereby increasing the danger that the jury would draw the very inference that the pretrial motion sought to prevent."

¶ 21. However, defense counsel did bring the issue to the court's attention immediately during the next recess. Defense counsel did not ask for a mistrial but sought "a preliminary, cautionary instruction" regarding the other acts evidence. The parties then discussed an appropriate curative instruction. The trial court composed and proposed an instruction and defense counsel was specifically asked, "[D]o you want any changes to that?" Defense counsel accepted the proposed instruction as provided.

¶ 22. This is classic judicial estoppel. The position English-Lancaster took in the trial court is clearly inconsistent with the one he assumes on appeal. At trial he urged the court to generate a cautionary instruction and now he maintains that a cautionary instruction was insufficient. The facts at issue here on appeal are the same as before the trial court. Finally, English-Lancaster requested and was provided with a cautionary instruction that he expressly approved without alteration. English-Lancaster cannot advocate a certain position in the trial court (requesting a cautionary instruction) and a contrary position on appeal (that the cautionary instruction was inadequate and a mistrial was necessary). *See State v. Washington*, 142 Wis. 2d 630, 635, 419 N.W.2d 275 (Ct. App. 1987). The doctrine of judicial estoppel bars us from addressing this argument.

¶ 23. English-Lancaster further argues that his judgment of conviction should be reversed in the interest of justice pursuant to Wis. Stat. § 752.35 because his trial counsel gave him erroneous information during plea negotiations regarding the maximum penalty for the plea offer from the State.

¶ 24. Wisconsin Stat. § 752.35 states:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

English-Lancaster urges us to exercise our "broad power of discretionary reversal" because justice has miscarried because he was deprived of an adequate opportunity to consider and evaluate the plea offer made by the State. We disagree.

¶ 25. In order to reverse a conviction based upon a miscarriage of justice, we must find that there is a substantial probability that a new trial would produce a different result. *Brookhouse v. State Farm Mut. Auto. Ins. Co.*, 130 Wis. 2d 166, 171, 387 N.W.2d 82 (Ct. App. 1986). We recognize here that English-Lancaster is not arguing that the correct information about the plea

bargain would have affected the judgment of conviction but instead would have affected the disposition after judgment.

¶ 26. Defense counsel initially misadvised English-Lancaster of the maximum penalty for the State's plea offer. However, before the trial began, defense counsel discovered his error and advised English-Lancaster of the correct penalty. Despite the corrected information, English-Lancaster rejected the State's plea offer and elected to proceed to trial.

¶ 27. Defense counsel testified at the postconviction hearing that he specifically asked English-Lancaster if he wanted to accept the offer in light of the new information or wanted to proceed to trial. He gave English-Lancaster an opportunity to privately discuss the offer with his wife and when defense counsel returned, English-Lancaster informed him that he wanted to proceed to trial. Defense counsel stated that English-Lancaster rejected all pursuits of plea offers.

¶ 28. At the postconviction hearing, English-Lancaster claimed that he did not understand that he could still accept the plea offer at that late stage of the process and was unaware that he could speak up or ask about the plea offer. This assertion is belied by English-Lancaster's behavior. Defense counsel brought the mistake to the trial court's attention immediately prior to trial:

> [DEFENSE COUNSEL]: Very briefly, Judge, I do apologize for not doing this earlier, I did have a discussion with Attorney Carter this morning. I had mistakenly informed my client of the potential penalties on the state's offer. We did rectify that situation this morning. I don't know that there was any reliance on my original statement of the maximum penalties; nev-

ertheless, *Mr. English-Lancaster did reject the state's offer regardless of the penalties.*

THE COURT: *Sir, . . . did you want to make any comment on those remarks of your attorney?*

[ENGLISH-LANCASTER]: *No, sir.* (Emphasis added.)

Defense counsel stated that English-Lancaster rejected the plea offer, whether it was five or ten years' exposure, and English-Lancaster said nothing to contradict this assertion when given the opportunity.

¶ 29. Furthermore, the trial court rejected English-Lancaster's testimony that he did not understand that he could still accept the plea offer and was unaware that he could speak up or ask about the plea offer and implicitly found his testimony to be incredible. The trial court made this finding in light of the fact that at the June 9, 2000 status conference, English-Lancaster was savvy and assertive enough to speak up in court and request an adjournment. The court concluded that English-Lancaster had no difficulty communicating his wishes to the court.

¶ 30. We conclude that the error regarding the maximum penalty of the plea offer was corrected and English-Lancaster was provided the correct information prior to trial and still elected to proceed to trial. We agree with the trial court that "now the defendant wishes he had chosen otherwise based upon the result and now that he knows what the outcome is tells us he would have chosen differently when indeed, he did not."

## CONCLUSION

¶ 31. We conclude that judicial estoppel bars English-Lancaster's claim that a cautionary instruction was inadequate to cure the introduction of prohibited

other acts evidence. Furthermore, we conclude that any error regarding plea offer misinformation was corrected prior to trial and that English-Lancaster was given an opportunity to accept the plea offer with the corrected information and instead elected to proceed to trial. We therefore affirm the judgment and order of the trial court.

*By the Court.*—Judgment and order affirmed.