The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Eliah S. KLAUSNER, Defendant–Appellant and Cross–Appellee.

No. 00CA2381.

Colorado Court of Appeals.

Jan. 16, 2003.

Rehearing Denied Feb. 27, 2003.

Certiorari Denied July 21, 2003.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

* Justice MARTINEZ would grant as to the following issues:

Whether the court of appeals erroneously concluded that defendants who are convicted under section 18-6.5-103(7) are subject to sentencing under the Colorado Sex Offender Lifetime Supervision act, where this offense is not specifically enumerated in the Act.

Whether the elemental jury instruction, which omitted three critical elements of the offense, deprived the defendant of his due process right to have the jury determine whether the prosecution proved a crime beyond a reasonable doubt. Whether the trial court erroneously excluded the videotaped confession that the defendant sought to cross-examine the detective's depiction of the confession.

Ken Salazar, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge KAPELKE.

Defendant, Eliah S. Klausner, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree sexual assault on an at-risk adult, a class two felony, in violation of § 18–6.5–103(7), C.R.S. 2002. The People cross-appeal, contending that the trial court erred in concluding that defendant's offense was not subject to the indeterminate sentencing scheme for sex offenders under § 18–1.3–1004, C.R.S.2002 (formerly § 16–13–804). We affirm the judgment, vacate the sentence, and remand for resentencing.

The victim, a 78–year–old nursing home resident suffering from advanced Alzheimer's disease, was sexually assaulted at her nursing home by defendant, a nursing assistant.

Defendant and the other male staff member on duty the night of the assault were questioned by police and consented to DNA testing. The test results revealed the presence of DNA that was consistent with defendant's, but not that of the other male staff member. After learning the test results, a police officer told defendant, "we found your semen in her." At that point, defendant confessed.

Defendant was not under arrest at the time of the confession. However, immediately after he confessed, he was placed under arrest and waived his *Miranda* rights.

The police videotaped defendant's confession, waiver of *Miranda* rights, and subsequent interrogation.

At trial, defendant admitted assaulting the victim, but argued that his actions constituted second degree sexual assault rather than first degree assault because the evidence did not establish that the victim was "physically helpless," as that term is defined by statute. The trial court instructed the jury on both offenses, and the jury returned a guilty verdict on the charge of first degree sexual assault. The court imposed a sentence of sixteen years, but rejected the prosecution's argument that defendant was subject to indeterminate sentencing.

## I. Sufficiency of the Evidence

Defendant first contends that the evidence was insufficient to establish that the victim was "physically helpless," as that term is defined by § 18–3–401(3), C.R.S.2002. We disagree.

Challenges to the sufficiency of the evidence to support a criminal conviction require a determination whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *People v. Quick,* 713 P.2d 1282 (Colo.1986).

A victim is "physically helpless" if he or she is "unconscious, asleep, or otherwise unable to indicate willingness to act." Section 18–3–401(3).

Our review of the record demonstrates that there was sufficient evidence from which the jury could find that the victim was unable to indicate a willingness to act and therefore "physically helpless" within the statutory definition of that term. There was testimony that the victim was virtually unable to converse and required total care; that she needed assistance in everything she did; that while she could at times respond to a simple yes-or-no question, her answers could be

nonsensical or inaccurate; that she was physically incapable of protecting herself against any attack; that she was in a locked facility for her own protection, because she would otherwise wander away; and that the Alzheimer's disease affected her both mentally and physically.

■ Defendant maintains that the evidence showed the victim was physically able to indicate a willingness to act. In so arguing, defendant points to the fact that the victim had walked toward him at his command to "come here." Further, he argues that the victim was merely mentally incapable of understanding the nature of her actions, rather than physically helpless. However, the evidence showed that the victim's condition affected her physically as well as mentally, such that she was unable to indicate willingness to act. We will not reweigh the evidence nor determine witness credibility. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

Accordingly, we find no error.

## II. Omission of Elements From Instruction

■ Defendant next contends that the trial court erred by omitting three elements from the jury instruction concerning first degree sexual assault. We perceive no basis for reversal.

The People concede that the instructions given to the jury regarding first degree sexual assault omitted the elements of the defendant's knowledge of the victim's physical helplessness and lack of consent. However, as defendant concedes, there was no objection to the instruction in the trial court. Therefore, the instructional error is subject to a constitutional harmless error or plain error analysis, rather than structural error analysis as urged by defendant. *See Griego v. People*, 19 P.3d 1 (Colo.2001).

■ A constitutional error is harmless when the reviewing court is confident beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Griego v. People, supra.* An error rises to the level of plain error when it so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Bogdanov v. People*, 941 P.2d 247 (Colo.1997).

Here, we conclude that reversal is not required under the constitutional harmless error standard. *See People v. Auman*, 67 P.3d 741, 2002 WL 31121380 (Colo.App. No. 99CA0016, Sept. 26, 2002).

Defendant did not argue that the victim had consented to the sexual assault. Indeed, he admitted to the arresting officer that she did not consent. Nor did defendant claim he had been unaware that the victim was physically helpless. Rather, it was defendant's theory of the case that the victim was simply not physically helpless within the meaning of the statute.

There was overwhelming evidence of the victim's physical limitations and her lack of consent, as well as of defendant's knowledge of those limitations and lack of consent. Because defendant's mental state and the victim's consent were not contested issues at trial, we are confident that the instructional errors did not contribute to the jury verdict. *See People v. Auman, supra* (although the instructions misdescribed the element of "knowingly," defendant's admissions at trial precluded a conclusion that a misinterpretation of the standard played a role in the verdict); *see also People v. Hunter*, 666 P.2d 570 (Colo.1983)(no plain error where court failed to instruct on an element of the crime not in issue); *People v. Romero*, 689 P.2d 692 (Colo.App.1984)(same).

Therefore, we find no reversible error.

## III. Exclusion of Videotaped Confession

■ Defendant next contends that the trial court abused its discretion in denying admission of his videotaped confession in connection with his cross-examination of the arresting officer. We disagree.

Defendant sought to introduce the videotape of his confession to allow the jury to observe his demeanor at that time and to show the context of his statements. The prosecution objected, arguing in part that the tape included references to defendant's drug use, which the trial court had previously ruled inadmissible. The prosecution further

argued that the tape had not been edited to redact the inadmissible statements.

The trial court denied defendant's request to admit the tape, noting that because defendant failed to raise the issue until midtrial, it was not feasible for the court to view the one and one-half hour tape, rule on the admissibility of various statements, and also afford the parties the opportunity to redact inadmissible material.

Defendant has not shown that he suffered any prejudice from the exclusion of the videotape. He does not claim that it contained exculpatory evidence, nor has he demonstrated that its content was inconsistent with the testimony of the arresting officer so as to impeach him. Moreover, defense counsel was permitted to cross-examine the arresting officer at length regarding defendant's demeanor and the full context of defendant's statements. Accordingly, we find no basis for reversal.

### IV. Voluntariness of Confession

Defendant next contends that the trial court erred in concluding that his confession was voluntary. Specifically, he argues that his confession to the arresting officer was involuntary because the officer made the deceptive claim that the police had found defendant's semen in the victim, when in fact the DNA evidence only indicated that defendant's DNA was consistent with the semen found in the victim. We find no error.

The determination of whether a confession is voluntary should be based upon the totality of the circumstances, including any official misconduct. *People v. Smith,* 716 P.2d 1115 (Colo.1986). On review, we are bound by the trial court's factual findings when they are supported by adequate evidence in the record, and we will not lightly disturb the court's finding that a statement was voluntarily made. *People v. Trujillo,* 784 P.2d 788 (Colo.1990).

While it is improper for a police officer to make false representations regarding the evidence of a defendant's guilt, a single impropriety of this kind, standing alone, will not necessarily render a confes-

sion involuntary. *People v. Cooper,* 731 P.2d 781 (Colo.App.1986).

Defendant relies on *People v. Freeman,* 668 P.2d 1371 (Colo.1983), in support of his claim that the alleged misrepresentation here was sufficient to render his confession involuntary. We find that case distinguishable. In *Freeman,* the officers made repeated misrepresentations to the defendant regarding his potential punishment and the strength of the evidence against him. Further, they conducted the interrogation by alternately berating, reassuring, and complimenting the defendant. The supreme court concluded that, while none of the factors considered separately would render the confession involuntary, their combined effect, together with the coercive atmosphere, mandated a determination that the confession was involuntary.

Here, defendant points only to the alleged misrepresentation, and the record reveals no other basis for deeming the confession involuntary. Furthermore, the trial court found, and the record confirms, that the statement regarding the DNA was not wholly inaccurate, because defendant's DNA was consistent with the DNA evidence found in the victim.

The trial court further ruled that even if the statement had been a misrepresentation, that was but one factor to be considered. Based on its review of the totality of the evidence, the court found the statement voluntary. The court pointed to several facts demonstrating voluntariness, including that: (1) defendant was not in custody at the time of the confession; (2) he waived his *Miranda* rights and gave further incriminating responses after making the confession; (3) no promises were made to him; (4) the style of the interview was not confrontational; (5) the questioning was nondirect, and he was given time to ponder his answers; (6) he wrote his statement while the officer was out of the room; (7) he did not request an attorney; and (8) his demeanor signaled that he had been caught.

Based on these findings, which have record support, we conclude that the trial court did not err in determining that the confession was voluntary.

### V. Applicability of Indeterminate Sentencing

■■■ By their cross-appeal, the People contend that the trial court erred in holding that the indeterminate sentencing scheme set forth in the Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1001, et seq., C.R.S.2002 (the Act), does not apply to the crime of first degree sexual assault on an at-risk adult. We agree.

■■■ The interpretation of a statute involves a question of law that we review de novo. *People v. Merchant*, 983 P.2d 108 (Colo.App.1999). In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. To determine legislative intent, we look first to the plain and ordinary meaning of the statutory language. If the language is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction. *People v. District Court*, 713 P.2d 918 (Colo.1986).

The Act provides for indeterminate sentencing for "sex offenders," including those convicted of certain enumerated crimes. *See* § 18–1.3–1003(5), C.R.S.2002. The purpose of the Act is to provide lifetime treatment and supervision for sex offenders so that they will not continue to present a danger to the public when released from incarceration. Section 18–1.3–1001.

Here, defendant was convicted of sexual assault on an at-risk adult pursuant to § 18–6.5–103(7). We note, and the People concede, that § 18–6.5–103(7) is not one of the statutes specifically enumerated in the Act.

However, § 18–6.5–103(7)(a) provides as follows:

> Any person who commits a crime of sexual assault, as such crime is described in section 18–3–402, sexual assault in the first degree, as such crime was described in section 18–3–402, as it existed prior to July 1, 2000, and the victim is an at-risk adult or an at-risk juvenile commits a class 2 felony.

As pertinent here, § 18–1.3–1003(4), C.R.S. 2002, defines "sex offender" as "a person who is convicted of . . . a sex offense."

Section 18–1.3–1003(5)(a)(I), in turn, defines "sex offense" to include "(A) sexual assault, as described in section 18–3–402; or (B) sexual assault in the first degree, as described in section 18–3–402 as it existed prior to July 1, 2000."

Defendant's conviction of sexual assault on an at-risk adult therefore required, by definition, proof that he had committed a sexual assault as described in § 18–3–402. Thus, defendant was convicted of a "sexual offense" within the meaning of the Act, and he is subject to indeterminate sentencing accordingly.

We reject defendant's argument that the General Assembly did not intend to subject a perpetrator to indeterminate sentencing where the victim is an at-risk adult. Such an interpretation appears to lead to an absurd result, because there is no rational basis for believing that the General Assembly wished to exclude from lifetime supervision those sex offenders whose victims had been especially vulnerable, that is, at-risk adults or juveniles.

Finally, we disagree with defendant's assertion that a remand for sentencing pursuant to the Act would violate the constitutional prohibition against double jeopardy. *See People v. District Court*, 673 P.2d 991 (Colo. 1983)(when an original sentence is found to be contrary to statute, resentencing for a longer term does not constitute double jeopardy); *People v. Ovalle*, 51 P.3d 1073 (Colo. App.2002)(no double jeopardy violation in resentencing for longer term where defendant had not fully discharged original sentence).

The judgment is affirmed, the sentence is vacated, and the case is remanded for resentencing under the Act.

NEY and NIETO, JJ., concur.