The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Adrianna L. SMITH, Defendant–Appellant.

No. 02CA1515.

Colorado Court of Appeals, Div. I.

Feb. 24, 2005.

Rehearing Denied April 28, 2005.

Certiorari Denied Oct. 11, 2005.*

---

* Justice KOURLIS would grant as to the following issue:
 Whether the Colorado Court of Appeals erred because the vehicular assault sentence was based on Blakely-compliant facts.

Justice COATS would grant as to the following issue:
 Whether the court should reconsider *Lopez v. People,* 113 P.3d 713 (Colo. 2005).

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, John D. Seidel, Assistant Attorney General on Supplemental Answer brief, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

TAUBMAN, J.

Defendant, Adrianna L. Smith, appeals the judgment of conviction entered on jury verdicts finding her guilty of "attempted criminally negligent homicide," vehicular assault, theft from a person, forgery, and unautho-rized use of a financial transaction device. She also appeals the sentence. We affirm in part, vacate in part, and remand for further proceedings.

In July 2001, defendant drove her two teenage companions to a grocery store. They entered the store while defendant waited in the vehicle.

While shopping inside the store, the victim left her shopping cart at the end of an aisle. When she saw defendant's companions hovering around her cart, she returned to the cart and found that her fanny pack, containing money and credit cards, had been taken. The victim followed the girls out of the store and yelled at them to return her fanny pack.

One of the girls tossed the fanny pack into defendant's car window, and both girls got into the vehicle. Just as they did so, the victim grabbed the driver's doorpost and reached into the car. One of the girls shouted, "Go, go, go, go!" Defendant accelerated, but then swerved right and hit the brakes, throwing the victim backwards at about fifteen to twenty miles per hour into a parked vehicle.

The victim then fell to the ground in a seated position. One of the girls said, "You killed her." Defendant drove away.

Within a few hours, defendant and her companions charged hundreds of dollars worth of merchandise on the victim's credit cards at various clothing stores in the Denver area. The victim suffered shattered vertebrae, a punctured lung, broken ribs, a bruised liver, and head injuries.

The jury convicted defendant of "attempted criminally negligent homicide," vehicular assault, theft from a person, forgery, unauthorized use of a credit card, and lesser nonincluded driving offenses.

In June 2002, at sentencing, the prosecution conceded that "attempted criminally negligent homicide" was not an offense in Colorado, *see People v. Eggert*, 923 P.2d 230 (Colo.App.1995), and, thus, the court did not sentence defendant for that offense.

The trial court sentenced defendant to six years for vehicular assault; a consecutive sentence of three years for theft from a

person; and lesser sentences on the other offenses. The court also imposed fines for some of the driving offenses, but suspended them on condition of payment of restitution. However, the court did not order restitution at sentencing.

In July 2002, defendant filed a notice of appeal, and in August 2002, while this appeal was pending, the trial court amended the mittimus to add $130,842.57 in restitution.

In 2004, we remanded the case to the trial court to determine five issues: (1) whether the original mittimus constituted a final appealable judgment, even though it did not reflect consideration of restitution; (2) whether the trial court had jurisdiction to enter the amended mittimus; (3) whether § 18–1.3–603, C.R.S.2004, authorized consideration of restitution on remand or whether the People were prohibited, on the basis of waiver or invited error, from asserting that the trial court did not comply with § 18–1.3–603; (4) whether the trial court could impose an order of restitution without violating defendant's constitutional right to be free from double jeopardy; and (5) whether the People could rely on Crim. P. 35(a) to assert that the original mittimus must be corrected, or whether this rule protects only defendants in criminal cases.

On remand, the trial court concluded that the original judgment lacking a restitution order was final and appealable and that it had lacked jurisdiction to enter the subsequent restitution order because this appeal was pending. The court also determined that § 18–1.3–603 was a mandatory provision which required the court's consideration of restitution, and therefore, the People could not have waived the right to request restitution. The court further determined that defendant's double jeopardy rights would not be violated by a restitution order entered on remand. Ultimately, the court issued a new mittimus which included a restitution order in the amount of $113,676.

Following recertification of the appeal, the parties submitted supplemental briefs on the remand issues, as well as on whether defendant's aggravated range sentence for vehicular assault was unconstitutional under the Supreme Court's recent decision in *Blakely*

*v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

### I. Motion to Sever

■ Defendant argues the trial court erred by denying her motion to sever the forgery and credit card counts because they were not relevant to the other charges and were unfairly prejudicial. We disagree.

Crim. P. 8(a) authorizes the joinder of offenses based on a series of acts arising from the same criminal episode. Colorado courts have allowed joinder of offenses committed at different times and places but constituting part of a schematic whole. *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976).

■ A motion for severance of counts is generally addressed to the sound discretion of the trial court, whose decision will be reversed only upon a showing of abuse of discretion. An abuse of discretion will be found where the joinder caused actual prejudice to the defendant and the trier of fact was not able to separate the facts and legal principles applicable to each offense. *People v. Aalbu,* 696 P.2d 796, 806 (Colo.1985).

■ CRE 403 provides that evidence should be excluded if its probative value is substantially outweighed by its prejudicial effect. We review a determination under this rule for abuse of discretion and must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice reasonably to be expected. *People v. Dist. Court,* 869 P.2d 1281 (Colo.1994).

Here, defendant failed to demonstrate any prejudice. As the trial court concluded, even if the counts had been tried separately, evidence of the subsequent use of the stolen credit cards was relevant and would have been admissible to prove that defendant was involved in the parking lot incident and to demonstrate defendant's intent regarding the theft.

Further, the jury did not convict defendant of the most serious offenses: it acquitted her of attempted murder and first degree assault and convicted her of lesser offenses, attempt-

ed negligent homicide and vehicular assault. Accordingly, the jury was able to separate the facts and legal principles applicable to each count.

Thus, we conclude, as did the trial court, that the incidents at the grocery store and the subsequent shopping sprees were a continuous criminal episode and that defendant was not prejudiced by denial of the motion to sever. Therefore, we perceive no abuse of discretion.

## II. Theft from a Person

■ Defendant contends that because the victim was a substantial distance from the shopping cart containing her fanny pack when it was stolen, the evidence does not support her conviction as a complicitor for theft from a person. We agree.

When the sufficiency of the evidence is challenged on appeal, a reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. McAfee,* 104 P.3d 226 (Colo.App.2004).

Section 18–4–401(5), C.R.S.2004, provides: "Theft from the person of another by means other than the use of force, threat, or intimidation is a class 5 felony without regard to the value of the thing taken."

In *People v. Warner,* 801 P.2d 1187 (Colo. 1990), the defendant argued that his actions did not constitute theft from the person. The defendant had utilized a series of short-change transactions to steal money from a cashier. In distinguishing between theft from a person under § 18–4–401(5) and theft by deception pursuant to § 18–4–401(1), C.R.S.2004, the supreme court looked to the legislative history of the statute defining theft from the person of another and concluded as follows:

> [S]ubsection (5) was designed to cover those situations that would otherwise constitute robbery, but for the lack of force, threats, or intimidation.... [T]heft from the person of another involves circumstances, such as pickpocketing, where

something of value is taken from one who is unconscious or unaware of the theft. The invasion of the victim's person presents an element of danger absent in other theft offenses, which justifies the greater penalty accorded those who violate subsection (5). Reading the general theft statute together with the robbery statute, we conclude that theft from the person of another is intended to cover those thefts involving an invasion of the victim's person of which the victim is unaware, but which are not accomplished through the use of force, threats, or intimidation.

*People v. Warner, supra,* 801 P.2d at 1191 (footnotes omitted).

The question here is whether the theft from the victim's shopping cart, when the victim is a substantial distance from the cart, constituted an "invasion of the victim's person" as contemplated by the statute. We conclude it did not.

■ Case law in Colorado and other jurisdictions is consistent in holding that a taking from a shopping cart is a taking from a person if the victim is holding, pushing, or otherwise in control of the cart at the time of the theft. *See People v. Evans,* 44 Colo.App. 288, 612 P.2d 1153 (1980) (taking of purse from shopping cart that victim was pushing, and which was under her control and in her present possession, constituted taking from person of another); *see also In re George B.,* 228 Cal.App.3d 1088, 1091–92, 279 Cal.Rptr. 388, 390 (1991) (theft from a person upheld where defendant took bag of groceries from shopping cart victim was pushing; theft from a person contemplates that property shall be in some way actually upon or attached to the person, or carried or held in actual physical possession); *People v. Harrell,* 342 Ill.App.3d 904, 277 Ill.Dec. 354, 795 N.E.2d 1022 (2003) (defendant reached around victim to take purse from cart; victim's privacy invaded); *State v. Washington,* 308 N.W.2d 422 (Iowa 1981) (defendant removed victim's purse from a shopping cart while the victim was unaware, but had a hand on the cart; defendant convicted of theft from the person); *Mack v. State,* 465 S.W.2d 941 (Tex.Crim. App.1971) (conviction of theft from person upheld where defendant took purse from the

shopping cart which victim was pushing); *cf. State v. Boss*, 848 So.2d 75 (La.Ct.App.2003) (conviction for theft from a person upheld where defendant snatched purse from shopping cart and victim was three feet away from cart and had turned her attention from cart).

In contrast, courts have consistently reversed convictions for theft from a person where the victim was not near the shopping cart when the taking occurred. *See People v. Sims*, 245 Ill.App.3d 221, 185 Ill.Dec. 452, 614 N.E.2d 893 (1993) (victim two and a half feet away from shopping cart and had her back to the cart); *State v. Lee*, 88 N.C.App. 478, 363 S.E.2d 656 (1988) (victim lured four or five feet away from cart by accomplice); *Farrell v. State*, 837 S.W.2d 395 (Tex.App.1992) (victim two to three feet from cart), *aff'd*, 864 S.W.2d 501 (Tex.Crim.App.1993).

We need not define how remote property may be from the body of the victim while its taking still constitutes theft from the person, because here, the evidence was undisputed that the victim was a substantial distance from the shopping cart when her pack was taken.

Although the precise distance was never clarified at trial, the prosecution indicated that the victim was twenty yards from her cart at the time of the theft. The victim also testified that she was at the other end of the aisle from her cart and that she had to return to the cart to verify that her fanny pack was taken. Also, the store's surveillance camera did not show her near her cart at the time of the theft.

In addition, we reject the People's argument that "from a person" for purposes of the theft statute should be interpreted to mean "when there is an opportunity for immediate conflict." This interpretation runs contrary to a plain language interpretation of the statute. Moreover, it is unpredictable in its application; whether a conflict may ensue could depend on fortuitous circumstances, such as the relative health or age of the victim and the thief. We do not believe that the General Assembly intended that the statute be interpreted so unpredictably.

Therefore, because the victim was a substantial distance from her fanny pack, we conclude that defendant's actions do not constitute theft from the person of another as defined in § 18–4–401(5). Consequently, we vacate the conviction for theft from a person.

### III. Theft

■ Although we conclude that defendant was not guilty of theft from a person, defendant does not dispute the other elements of theft. Nevertheless, the level of offense depends upon proof of the value of the stolen property. *Henson v. People*, 166 Colo. 428, 444 P.2d 275 (1968). Here, the record reflects that, among other things, $850 in cash and two pairs of eyeglasses were in the fanny pack when it was stolen. *See People v. Paris*, 182 Colo. 148, 511 P.2d 893 (1973) (value determined at the time of taking). Therefore, defendant's actions, as found by the jury, constitute theft pursuant to § 18–4–401(1).

Based upon the jury's finding that "a thing of value" was stolen and value of the items taken from the victim, it might appear that a conviction for theft as a class 4 felony could be entered against defendant under § 18–4–401(2)(c), C.R.S.2004 (theft is a class 4 felony when value of thing involved is $500 or more but less than $15,000). However, because the offense with which defendant was charged, theft from a person, "is a class 5 felony without regard to the value of the thing taken" under § 18–4–401(5), the jury made no finding as to the value of things taken from the victim. Thus, a conviction may only be entered for the lowest level of theft, a class 3 misdemeanor, under § 18–4–401(2)(a), C.R.S.2004 (theft is a class 3 misdemeanor when the value of the thing involved is less than $100). *See Blakely v. Washington, supra* (sentence may only be imposed based on facts found by a jury or admitted by defendant).

### IV. Jury Instruction on Vehicular Assault

■ Defendant asserts that the trial court erred by instructing the jury that she could be found guilty of vehicular assault by "act or failure to act." We perceive no reversible error.

 Defendant did not object to the instruction in the trial court, and, generally, we review the issue under a plain error standard of review. Under plain error review, reversal is required only if the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. If the issue raised is of constitutional dimension, however, then reversal is required unless we are convinced beyond a reasonable doubt that the error is harmless beyond a reasonable doubt. *People v. Harlan*, 8 P.3d 448, 490 (Colo.2000).

 Under either standard, the appellate court may consider the entire record. *Gann v. People*, 736 P.2d 37 (Colo.1987) (plain error); *People v. Welsh*, 58 P.3d 1065 (Colo. App.2002) (constitutional harmless error), *aff'd*, 80 P.3d 296 (Colo.2003).

Here, we need not decide which standard applies because upon review of the entire record we conclude reversal would not be required under the higher standard of constitutional harmless error. *See People v. Auman*, 67 P.3d 741 (Colo.App.2002) (*cert. granted* Mar. 24, 2003).

In *People v. Stewart*, 55 P.3d 107, 116 (Colo.2002), the supreme court concluded that vehicular assault cannot apply to acts of omission.

Here, defendant was convicted of vehicular assault. The jury was instructed as to the elements of vehicular assault pursuant to § 18–3–205(1)(a), C.R.S.2004, which provides: "If a person operates or drives a motor vehicle in a reckless manner, and this conduct is the proximate cause of serious bodily injury to another, such person commits vehicular assault." The jury was also instructed that "proximate cause" means: "[A]n act or *failure to act* which in natural and probable sequence produced the serious bodily injury of [the victim]. It is a cause without which the serious bodily injury of [the victim] would not have occurred" (emphasis added).

Defendant argues that her conviction for vehicular assault must be reversed because during closing arguments the People asserted that the victim's injuries were caused by defendant's failure to stop, and, thus, the jury may have convicted her of vehicular assault based on an act of omission. We disagree.

At trial, defendant justified her actions in the grocery store parking lot by indicating that a strange woman had grabbed her car and was reaching for her children in the back seat. Therefore, she explained, she accelerated and did not stop her vehicle while the victim was holding on to it. During closing arguments, the prosecution referred to defendant's decision not to stop her vehicle. However, each reference was in the context of (1) arguing that defendant's explanation was pretextual because she did not stop to see whether her children or the victim was harmed, or (2) arguing concurrently that defendant accelerated her vehicle. Additionally, during closing argument, both the prosecutor and defense counsel emphasized defendant's actions in pressing the accelerator, rather than defendant's failure to act. Defense counsel acknowledged that defendant pressed the accelerator, but argued that she did so accidentally.

Further, the record is replete with evidence that defendant's actions, not omissions, caused the victim's injuries. Substantial evidence supports the conclusion that defendant accelerated when the victim grabbed onto her vehicle, then slammed on the brakes and turned to the right, flinging the victim into a parked truck.

Therefore, because we are convinced beyond a reasonable doubt that the instructional error regarding proximate cause was harmless beyond a reasonable doubt, we will not reverse defendant's conviction for vehicular assault. *See People v. Harlan, supra.*

### V. Sixth Amendment Right to Trial by Jury

 Defendant contends that her aggravated range sentence for the vehicular assault conviction violated her right to a trial by jury under the Sixth Amendment. We agree.

In *Blakely v. Washington, supra*, the United States Supreme Court struck down a Washington statute that permitted a judge to impose a sentence above the statutory maxi-

mum on the basis of facts other than those found by a jury or admitted by the defendant. The Court determined that such aggravated sentencing violated a defendant's Sixth Amendment right to a trial by jury. The Court's decision was based in part on its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), where it determined that the trial court's "authority to sentence derives wholly from the jury's verdict." *Blakely, supra,* 542 U.S. at 306, 124 S.Ct. at 2539.

In *People v. Moon,* 121 P.3d 218 (Colo. App. No. 03CA1107, 2004 WL 2503424, Oct. 21, 2004), a division of this court compared the Washington sentencing statute at issue in *Blakely* with § 18–1.3–401(6), C.R.S.2004, the Colorado counterpart. Section 18–1.3–401(6) provides in part:

> [T]he court shall impose a definite sentence which is within the presumptive ranges set forth in subsection (1) of this section unless it concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of this code . . . .

The division in *Moon* determined that both states' statutes required additional findings to support an aggravated sentence. However, the Washington statute allowed the trial court to impose an aggravated sentence only if "it [took] into account factors other than those which are used in computing the standard range sentence for the offense." *Moon, supra,* 121 P.3d at 221. In contrast, the division determined that under the Colorado statute, factors that were considered in presumptive range sentencing could also be considered in imposing an aggravated sentence. The division in *Moon* concluded that for the purposes of applying *Apprendi* and *Blakely,* the statutory maximum is the maximum in the presumptive range. The division further concluded:

> [A] sentence in the aggravated range under § 18–1.3–401(6) violates the Sixth Amendment right to trial by jury, unless the facts found by the trial court to support the sentence, including the ultimate

finding that these facts are extraordinary: (1) are reflected in the jury's verdict; (2) were admitted by the defendant for purpose of sentencing; or (3) involve prior criminality, to the extent permitted by *Apprendi.*

*Moon, supra,* 121 P.3d at 222.

Here, defendant was convicted of vehicular assault under § 18–3–205, C.R.S.2004, a class five felony. The presumptive range for a class five felony is one to three years. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2004. The trial court imposed an aggravated sentence of six years. However, several of the factors the trial court relied upon in imposing that sentence were improper under *Moon* and *Blakely.*

After determining that defendant had never "been in any sort of treatment program," the trial court concluded that she "was in need of correctional treatment that can most effectively be provided by a sentence to imprisonment." Although the court did not state where it obtained the facts on which it based that decision, clearly those facts were not found by the jury to be aggravating or extraordinary or admitted by defendant.

The trial court also based the aggravated range sentence on the fact that the victim was "totally random." Again, this observation was not based on a factual finding by the jury or an admission by defendant.

Finally, the court concluded that an aggravated range sentence was appropriate based on defendant's "complete disregard for the rights of other individuals." Again, the jury made no such finding. Nor was it an admission by defendant because part of her theory of defense was that she continued to drive away with the victim hanging onto the vehicle because the victim was grabbing at her child.

We conclude that the trial court imposed a sentence in the aggravated range based upon its consideration of improper facts under *Blakely.* Consequently, the sentence violated defendant's Sixth Amendment right to a trial by jury.

We decline to address the issue of whether the People should be afforded the option of convening a jury for a "sentencing phase"

trial, at which the jury would ascertain the existence and gravity of supposedly aggravating factors because neither party raised this issue.

Accordingly, we remand the case for resentencing on the conviction of vehicular assault in a manner consistent with *Blakely* and *Moon*.

## VI. Restitution

As noted above, we previously remanded this case to the trial court for consideration of five issues dealing with restitution. We will consider those issues, as well as an additional issue regarding restitution raised by defendant in her opening brief.

### A. Double Jeopardy

■ Defendant argues that any imposition of restitution after she began to serve her sentence would violate her right to be free from double jeopardy. The People respond that the original sentence was illegal because it did not include a determination of restitution as required by § 18–1.3–603, and therefore, the trial court was free to correct the illegal sentence without implicating defendant's right against double jeopardy. We agree with the People.

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit courts from punishing a defendant twice for the same offense. *People v. McQuarrie*, 66 P.3d 181 (Colo.App.2002).

■ However, a sentence that is contrary to legislative mandates is illegal and may be corrected at any time by a sentencing court without violating a defendant's rights against double jeopardy. *People v. Reynolds*, 907 P.2d 670 (Colo.App.1995); *cf. People v. Shepard*, 989 P.2d 183 (Colo.App.1999) (trial court is prohibited from increasing a *legal sentence* once it has been imposed and defendant has begun serving it).

Section 18–1.3–603(1), requires that every judgment for a felony conviction "include consideration of restitution" and "one or more of the following." The provision then lists four considerations, on one of which the trial court must make a finding, in determin-

ing whether and to what extent an order of restitution is warranted. However, even if the court determines that no restitution is warranted because the victim did not suffer a pecuniary loss, it may only deny restitution after making a specific finding to that effect. *People v. Stovall*, 75 P.3d 1165 (Colo.App. 2003); *see also People v. Johnson*, 780 P.2d 504 (Colo.1989) (sentencing court is required to· determine the amount of restitution owed to the victim, include that amount in the judgment of conviction, and endorse it upon mittimus).

Although the trial court here did discuss the issue of restitution at sentencing, the trial court did not include any finding regarding restitution in the mittimus. Because the trial court did not consider restitution as required by § 18–1.3–603(1), we conclude that defendant's original sentence was illegal. *See Stovall*, *supra* (§ 18–1.3–603(1) mandates that restitution be ordered in every case in which the victim has suffered a pecuniary loss). Because defendant's sentence was illegal, the trial court did not violate defendant's right to be free from double jeopardy when it ordered restitution on remand.

Furthermore, because consideration of restitution is mandatory under § 18–1.3–603(1), we conclude that the sentencing court was not only able, but also required to correct the mittimus. *Cf. Craig v. People*, 986 P.2d 951 (Colo.1999) (mittimus that does not reflect the required mandatory parole period must be corrected by the sentencing court).

### B. Moot Issues

We instructed the trial court on remand to determine whether it had lacked jurisdiction to enter the original restitution order, whether the original mittimus in this case constituted a final appealable judgment even though it did not reflect consideration of restitution, whether the prosecution is allowed to bring a motion to correct an illegal sentence under Crim. P. 35(a), and whether the trial court could consider restitution on remand. However, in light of the foregoing analysis, these issues are moot.

Additionally, defendant contended in her original brief that she had a right to be present when restitution was determined.

Because defendant was present at the remand hearing on restitution, this issue is also moot.

## VII. Conclusion

Last, we note that the parties agree that "attempted criminally negligent homicide" is not a cognizable offense in Colorado. Therefore, the mittimus should be corrected to remove that conviction. *See People v. Eggert, supra.*

Accordingly, the judgment of conviction for theft from a person is vacated. The case is remanded for correction of the mittimus to remove the conviction for attempted criminally negligent homicide and for resentencing on the theft and vehicular assault convictions. The judgment and sentence are otherwise affirmed.

Judge MARQUEZ concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While concurring in the majority's decision to affirm in part and vacate in part, I write separately because I believe the instructional error discussed in part IV should be reviewed only for plain error, not for constitutional harmless error, based on defendant's failure either to object to the instruction given or to tender a correct instruction.

Initially, I adopt the majority's formulation of both standards: plain error review requires reversal "only if the error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the conviction"; under constitutional harmless error review, "reversal is required unless we are convinced beyond a reasonable doubt that the error is harmless beyond a reasonable doubt." *See, e.g., People v. Harlan,* 8 P.3d 448 (Colo.2000). However, the majority then concludes, "[W]e need not decide which standard applies because upon review of the entire record we conclude reversal would not be required under the higher standard of constitutional harmless error."

Further, I note that, once error has been shown, the defendant bears the burden of proving prejudice under plain error review,

*see, e.g., People v. Garcia,* 28 P.3d 340 (Colo. 2001), while the People bear the burden of disproving prejudice under review for constitutional harmless error. *See, e.g., People v. Harris,* 43 P.3d 221 (Colo.2002).

In *Graham v. People,* 705 P.2d 505, 509 n. 6 (Colo.1985), the court observed, "The standards for reversal under the plain error and constitutional error doctrines are quite similar in practice." Nevertheless, these two standards occupy different ends of the appellate review spectrum, and they raise opposite burdens of proof. Hence, I respectfully suggest we should not continue to avoid deciding which standard applies by concluding that the conviction would be affirmed even assuming the constitutional harmless error standard applies. *See, e.g., People v. Klausner,* 74 P.3d 421 (Colo.App.2003); *People v. Auman,* 67 P.3d 741 (Colo.App.2002) (*cert. granted* on other issues Mar. 24, 2003); *People v. Jurado,* 30 P.3d 769 (Colo.App.2001).

In *Griego v. People,* 19 P.3d 1 (Colo.2001), the supreme court said that error in an elemental jury instruction is "subject to constitutional harmless *or* plain error analysis." 19 P.3d at 8 (emphasis added). In some decisions involving unpreserved constitutional error, the supreme court has applied plain error review. *See, e.g., People v. Garcia, supra; People v. Dunlap,* 975 P.2d 723 (Colo. 1999); *Gann v. People,* 736 P.2d 37 (Colo. 1987). In other decisions involving such error, it has applied constitutional harmless error review. *See, e.g., People v. Harlan, supra; People v. Davis,* 794 P.2d 159 (Colo. 1990); *Graham v. People, supra.*

I am aware of no supreme court opinion that expressly recognizes this tension and then resolves which standard should be applied to unpreserved, constitutional error. However, in *People v. Petschow,* 119 P.3d 495 (Colo.App. No. 01CA1684, 2004 WL 2136945, Sept. 23, 2004), a division of this court analyzed relevant authority and, focusing on the wording of Crim.P. 52(b), concluded that harmless beyond a reasonable doubt review applies to an unpreserved instructional error of constitutional dimension only if that error is both plain and affects substantial rights.

For the following reasons, I conclude that unpreserved, constitutional errors should be reviewed using the plain error standard, even if the error is one "affecting substantial rights" under Crim.P. 52(b).

First, the supreme court has never framed the issue as one in which the Colorado Constitution offers greater protection than the United States Constitution. I discern no reason to do so.

Second, and unlike the division in *Petschow*, Crim. P. 52 does not guide me to the harmless beyond a reasonable doubt standard. Many constitutional errors will be both plain and affecting substantial rights, the criteria for noticing them under Crim.P. 52(b). However, the Rule does not address either scope of review or burden of proof. Indeed, the Rule only informs the appellate court that it "may" notice such errors.

Third, the supreme court cases applying constitutional harmless error review cite prior decisions of that court, which in turn rely most frequently on *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, in *Harrington* the constitutional error had been raised below. *See People v. Bosby*, 256 Cal.App.2d 209, 64 Cal.Rptr. 159 (1967). And *Chapman* does not say whether the error was preserved in the lower court.

Fourth, application of plain error review would be more consistent with recent decisions of the United States Supreme Court that clearly involve unpreserved, constitutional error. *See, e.g., United States v. Dominguez Benitez*, 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004); *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *cf. United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Fifth, and from my perspective most important, restricting unpreserved errors to plain error review encourages defendants to make their objections below and thus promotes the salutary purposes of the contemporaneous objection rule. *See United States v. Robinson*, 485 U.S. 25, 34, 108 S.Ct. 864,

870, 99 L.Ed.2d 23 (1988) (Blackmun, J., concurring in part and dissenting in part); *United States v. Harrison*, 931 F.2d 65 (D.C.Cir.1991), *abrogated by United States v. Johnson*, 216 F.3d 1162 (D.C.Cir.2000); *United States v. Thame*, 846 F.2d 200 (3d Cir.1988).

The contemporaneous objection rule conserves judicial resources by ensuring that trial judges will have an opportunity to correct any error which could otherwise lead to a retrial. *See People v. Rollins*, 892 P.2d 866, 874 n. 13 (Colo.1995) ("An accused may not withhold his objection until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action.").

A contemporaneous objection also increases the likelihood that a sufficient record will exist for meaningful appellate review. And, if the objection is overruled, the People are forewarned to build a record that can sustain their burden of proof when that ruling is reviewed for constitutional harmless error.

Failure to adhere to this rule allows, and perhaps encourages, defense counsel intentionally to withhold a meritorious objection, permit error to occur, and then, in the event of a conviction, raise the error for the first time on appeal, but nevertheless benefit from the same constitutional harmless error review that would apply if the objection had been raised. *See, e.g., United States v. Stewart*, 256 F.3d 231 (4th Cir.2001); *State v. Richthofen*, 803 So.2d 171 (La.Ct.App.2001); *State v. English–Lancaster*, 252 Wis.2d 388, 642 N.W.2d 627 (2002).

Moreover, the risk of intentionally withholding an instructional objection has been reduced because *People v. Stewart*, 55 P.3d 107 (Colo.2002), limits denial of appellate review of instructional errors under the invited error doctrine to circumstances that were clearly strategic, rather than possibly inadvertent. However, the reason why an instructional objection was not raised may often be difficult to glean from the record.

Here, the instructional error illustrates the importance of applying plain error review to foster contemporaneous objections.

On appeal, the People do not seriously argue that the instruction was correct. Hence, presumably they would have conceded the point had it been raised at the instruction conference. Regardless of what position the People might have taken, once alerted by an objection or the tender of a proper instruction, the trial court could easily have corrected the instruction.

Accordingly, I would review the instructional issue here for plain error, even if it is of constitutional dimension, which the majority does not decide. However, because this standard is more lenient than the constitutional harmless error review applied by the majority, the result would be the same.