**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 23, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2022AP1740-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2021CF341

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMES JUSTIN MACK FARRAR,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   James Justin Mack Farrar appeals a judgment of conviction for arson of a building of another, as a repeater.  Farrar argues that the

evidence presented at his jury trial was insufficient to support his conviction. We reject this argument and affirm.

## BACKGROUND

¶2 The arson charge against Farrar arose following a March 1, 2021 fire at a residence rented by Farrar's father on 10th Avenue in Wausau (hereinafter, "the residence"). At the time of the fire, Farrar's father was in the hospital, and Farrar was living at the residence.

¶3 To convict Farrar of the arson charge, the State needed to prove four elements beyond a reasonable doubt: (1) that Farrar intentionally damaged a building by means of fire; (2) that the building belonged to another person; (3) that Farrar damaged the building without the owner's consent; and (4) that Farrar knew that the building belonged to another person and knew that the other person did not consent to the damage of the building. *See* WIS JI—CRIMINAL 1404 (2008); WIS. STAT. § 943.02(1)(a) (2021-22).[1] At trial, the only one of these elements that Farrar disputed was the intent element. In particular, the defense conceded that Farrar had caused the fire at the residence but argued that he did so "accidentally" and did not intend to damage the residence. More specifically, defense counsel asserted that the fire was the result of Farrar combining "heavy drinking and being careless with cigarettes."

¶4 The jury rejected the defense's theory that Farrar set the fire accidentally and found Farrar guilty of the arson charge. Farrar now appeals,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

challenging the sufficiency of the evidence to support his conviction. Additional facts are provided below.

## DISCUSSION

¶5 Whether the evidence was sufficient to sustain a defendant's conviction is a question of law that we review independently. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. When reviewing the sufficiency of the evidence, we apply a "highly deferential" test. *State v. Kimbrough*, 2001 WI App 138, ¶12, 246 Wis. 2d 648, 630 N.W.2d 752. We will not reverse unless the evidence is so insufficient in probative value and force that, as a matter of law, no reasonable fact finder could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Stated differently, we must affirm "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," even if we believe the trier of fact should not have found guilt based on the evidence before it. *Id.* This standard applies regardless of whether the evidence presented at trial was direct or circumstantial. *Id.* "[A] finding of guilt may rest upon evidence that is entirely circumstantial," and "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Id.* at 501.

¶6 As noted above, the only disputed issue at Farrar's jury trial was whether Farrar *intended* to damage the residence by means of fire. On appeal, however, Farrar asserts that the evidence was insufficient to establish *both* that he started the fire *and* that he did so with intent to damage the home. We agree with the State that having conceded at trial that he caused the fire at the residence, Farrar cannot now argue that the evidence was insufficient to prove that he did so.

*See State v. English-Lancaster*, 2002 WI App 74, ¶18, 252 Wis. 2d 388, 642 N.W.2d 627 ("Judicial estoppel is an equitable rule applied at the discretion of the court to prevent a party from adopting inconsistent positions in legal proceedings."). Accordingly, we confine our analysis to whether the evidence at trial was sufficient to establish that Farrar intended to damage the residence by means of fire.[2]

¶7 The jury was instructed that in order to find that Farrar had the requisite intent, it needed to find that Farrar "had the mental purpose to damage the building of another by means of fire or was aware that his conduct was practically certain to cause damage to the building of another." *See* WIS JI—CRIMINAL 1404 (2008). The jury was also instructed that it could determine intent "directly or indirectly from all the facts in evidence concerning this offense" and that it could "consider any statements or conduct of the [d]efendant which indicate state of mind." *See* WIS JI—CRIMINAL 923A (2010).

¶8 Applying these standards, we agree with the State that the evidence at trial was sufficient to support the jury's determination that Farrar intended to

---

[2] In his reply brief, Farrar concedes that his trial attorney told the jury that Farrar caused the fire at the residence. Farrar argues, however, that "there is nothing in the record which demonstrates [that he] acquiesced to this concession." Farrar further contends that the law is unresolved as to whether an attorney may "make the unilateral decision to concede an element of an offense." He therefore asserts that if we conclude the evidence was sufficient to show that he intended to damage the residence by means of fire, we should remand this matter to the circuit court "for an evidentiary hearing to develop the record as to whether [defense counsel's concession that Farrar started the fire] was made with the consent of … Farrar, or was a unilateral strategic decision made by counsel."

Farrar has not raised an ineffective assistance of trial counsel claim on appeal. In addition, Farrar did not file a postconviction motion alleging that his trial attorney was ineffective by conceding that Farrar caused the fire. Because no ineffective assistance claim is before us, we will not remand for an evidentiary hearing regarding the propriety of trial counsel's concession that Farrar caused the fire.

damage the residence by means of fire. At trial, Farrar's stepsister, Sarah,[3] testified that Farrar's father was hospitalized at the time of the fire and that Farrar was living at the residence. Sarah testified that she went to the residence twice on the day of the fire because Farrar needed money. Sarah knew that Farrar wanted to take over the lease for the residence, but she did not want him to do so. She and Farrar discussed this subject during her visits to the residence on the day of the fire.

¶9 Sarah testified that she left the residence at about 6:30 p.m. on the day of the fire, and police notified her of the fire between 9:30 and 10:00 p.m. She then went back to the residence and spoke with Farrar, who initially told her that "somebody broke into the house and set the fire[]." At another point, however, Farrar stated: "[W]hat the fuck am I going to do? *What the fuck did I do?* Where am I going to stay?" (Emphasis added.) Sarah also testified that Farrar "just kept screaming the F-word." She believed this behavior showed that Farrar "knew he was in trouble."

¶10 Officer Matthew Grover of the Wausau Police Department, who was the first law enforcement officer to respond to the fire, testified that Farrar's behavior at the scene was abnormal for a fire victim. He explained that Farrar "was initially motivated in getting back towards the house," which was not typical. He also testified that victims of fire loss are typically "very emotional, and usually it's because of property, personal belongings and things that they're losing and know that they aren't able to recover as a result of the fire." Farrar, however, did not display "any concern about any property or anything like that in the house."

---

[3] We refer to Farrar's stepsister using a pseudonym in order to protect her privacy.

¶11 Officer Benjamin Thumann of the Wausau Police Department testified that he also spoke with Farrar at the scene of the fire. According to Thumann, Farrar "made several comments about directing the fire crew to a particular area of the residence" and told Thumann that he had "firefighter experience." Thumann also testified that Farrar provided inconsistent accounts of his whereabouts prior to the fire. Farrar "initially stated that he had left the residence for approximately ten minutes to go to the gas station" and that, upon his return, "he observed smoke coming from the chimney." Later, Farrar told Thumann that "he had left the residence for the same amount of time, approximately ten minutes, to catch his breath," but he did not go to the gas station. Farrar told Thumann that he needed to catch his breath because "he had learned … information about his father and was upset about that and also had gotten into some argument, a verbal argument, with his girlfriend."

¶12 Deputy Chief Jeremy Kopp of the Wausau Fire Department testified that he was the "incident commander" for the fire at the residence. Kopp testified that he spoke with Farrar at the scene of the fire, but Farrar's statements "throughout the first ten, twenty minutes, didn't jibe, they weren't consistent, which drew [Kopp's] attention to some concerns [he] might have with this fire." In particular, Kopp noted that Farrar "did talk about how he tried to get back in to put the fire out, as well as to save some pets," which was inconsistent with Farrar's earlier statement that he had discovered the fire when he returned from "walking the pets." Kopp also testified that he heard Farrar speaking loudly on the phone "about watching his dad's house and that, you know—there was some sort of disagreement on who should have his dad's things or the house if something were to happen to his dad."

6

¶13 Like Grover, Kopp testified that Farrar was not "acting like other victims" of structure fires. He explained:

> Typically when I arrive on a fire scene where someone is losing personal belongings, they're usually either screaming, crying, upset, trying to explain to us what is important to them, what needs to come out if there's, you know, people or pets left in the house, personal belongings that might be important, those types of things, and those never came up, it was more about him being a firefighter in the past and how he tried to save it and what he did and those type of things.

¶14 Kopp further testified that after the firefighters at the scene had "knocked down" a fire in a bedroom on the main level of the residence, they searched the house and discovered a second fire in the basement. Kopp testified that the presence of two fires in the home, in different locations, caused him to question whether the fires had been set intentionally because it is not common to encounter two separate, unconnected fires at the scene of a structure fire. Kopp therefore made the decision to call fire investigators.

¶15 Lieutenant Inspector Shahn Kariger of the Wausau Fire Department testified as an expert regarding his investigation of the fire at the residence. Kariger explained that the "cause of a fire" is "the action that [brings] together a fuel, an oxygen and the ignition source." He testified that an "ignition source" is something that can be introduced to a fuel "to begin the combustion process." He explained that it is not uncommon for an investigator to be unable to determine the ignition source for a fire because an ignition source may be burned or carried away. Kariger further explained that the cause of a fire can be intentional or accidental. He testified that the presence of "multiple fires"—that is, "two or more fires in a particular fire scene that are not connected"—indicates that the fires are the result of an intentional act.

¶16     Following his investigation, Kariger concluded that the fire in the basement of the residence "occurred in that location" and was "not connected to the first floor fire." Although Kariger did not find any evidence of an accelerant or an ignition source in the basement, he believed, to a reasonable degree of scientific certainty, that the basement fire started within a pile of clothing and was "the result of an intentional act."

¶17     Similarly, Kariger testified that when investigating the fire in the bedroom of the residence, he did not find any evidence of an accelerant or an ignition source. Kariger nevertheless believed, to a reasonable degree of scientific certainty, that the bedroom fire had originated underneath or at the edge of a bed and was caused by an intentional act. Kariger further testified that there was nothing connecting the bedroom fire with the basement fire and that the basement fire did not occur directly underneath the bedroom fire. He explained that "having two fires burning simultaneously in two different areas, two different floors, that are not connected, it's impossible to call those accidental."

¶18     Detective Nathan Stetzer of the Wausau Police Department testified that when he interviewed Farrar the day after the fire, Farrar told Stetzer about his prior firefighting experience. During a subsequent interview, when Stetzer told Farrar that the fire "was not caused naturally," Farrar "shook his head in agreement" and "agree[d] that this was an intentional fire." Farrar also told Stetzer that he "grew up playing with fire."

¶19     Based on this evidence, the jury could reasonably find, beyond a reasonable doubt, that Farrar intentionally set the fires at the residence. The jury could properly rely on Kariger's expert testimony that the two unconnected fires in different areas of the residence were set intentionally and were not accidental. The

8

jury could also consider Farrar's inconsistent statements at the scene and could reasonably infer, based on those statements, that Farrar was not being entirely truthful regarding the circumstances surrounding the fire. The jury could also appropriately consider the testimony of multiple witnesses that Farrar was not behaving like a typical fire victim and did not show any concern about any property inside the house.

¶20 In addition, based on various witnesses' testimony about Farrar's prior firefighting experience, the jury could reasonably infer that Farrar was knowledgeable about fire safety and, thus, would have been unlikely to start the fires accidentally. Furthermore, Farrar's own admission that he "grew up playing with fire" also supported an inference that he intentionally set the fires. The jury could also reasonably interpret Farrar's statement at the scene—"What the fuck did I do?"—as evidence of consciousness of guilt. Moreover, the jury could consider Farrar's agreement with Stetzer that the fires were started intentionally, which was inconsistent with Farrar's defense at trial that he had accidentally started the fires.

¶21 Finally, the jury could consider the evidence showing that, shortly before the fires, Farrar had a dispute with Sarah about his plan to take over his father's lease of the residence. The jury could reasonably infer that this dispute provided a motive for Farrar to set the fires.

¶22 The evidence summarized above, and reasonable inferences from that evidence, supported the jury's determination that Farrar intentionally damaged the residence by means of fire—either because he had the mental purpose to damage the residence or because he was aware that his conduct was practically certain to do so. *See* WIS JI—CRIMINAL 1404 (2008). Although Farrar cites some

evidence that may have supported a contrary finding, "when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Poellinger*, 153 Wis. 2d at 506-07. None of the evidence discussed above is incredible as a matter of law.

¶23     Farrar cites three cases in support of his claim that the evidence at trial was insufficient to support his conviction: *Gerke v. State*, 151 Wis. 495, 139 N.W. 404 (1913); *Bruno v. State*, 171 Wis. 490, 177 N.W. 610 (1920); and *State v. Kitowski*, 44 Wis. 2d 259, 170 N.W.2d 703 (1969). None of these cases compels a conclusion that the evidence was insufficient to support the jury's verdict.

¶24     In *Gerke* and *Bruno*, our supreme court reversed the defendants' respective convictions for arson based on insufficiency of the evidence. *See Gerke*, 151 Wis. at 503; *Bruno*, 171 Wis. at 497. In each of those cases, however, the evidence clearly showed that *someone* had intentionally set fire to a building, and the disputed issue was whether the defendant was that person. *See Gerke*, 151 Wis. at 499 (stating that witnesses found a pile of kindling saturated by kerosene at the location of the fire); *Bruno*, 171 Wis. at 491 (stating that the fire was "evidently of an incendiary nature from the manner of its burning and the odor of kerosene detected by those who first reached it"). Here, in contrast, Farrar conceded at trial that he had started the fires at the residence, and the disputed issue was whether he did so intentionally or accidentally. Because *Gerke* and *Bruno* addressed the sufficiency of the evidence regarding the identity of the arsonist, not the sufficiency of the evidence as to whether the fires were set

10

intentionally, those cases are not dispositive of whether the evidence here was sufficient to prove that Farrar intentionally set the fires at the residence.

¶25    In *Kitowski*, another arson case, our supreme court concluded the evidence was sufficient for the jury to find both that the fire in question was intentionally set and that the defendant was the person who set the fire. *Kitowski*, 44 Wis. 2d at 261, 264.  Farrar argues that like the defendant in *Kitowski*, he can be placed at the scene of the fire, but unlike that defendant, he never expressed any intent to burn the building.  We disagree with Farrar's suggestion that an expression of intent was required for the jury to find that he intentionally set the fires at the residence.  As explained above, the evidence introduced at trial, while circumstantial, was sufficient to support a reasonable inference that Farrar started the fires with the intent to damage the residence.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

11